UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ABBVIE INC.,<br><br>Plaintiff,<br><br>v.<br><br>GENMAB A/S; PROFOUNDBIO US CO.; PROFOUNDBIO (SUZHOU) CO., LTD.; TAE HAN; JULIA GAVRILYUK; and DOES 1–10,<br><br>Defendants. | No.<br><br>COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff ABBVIE INC. ("Plaintiff" or "AbbVie") files this Complaint against Defendants GENMAB A/S ("Genmab"); PROFOUNDBIO US CO. and PROFOUNDBIO (SUZHOU) CO., LTD. (collectively, "ProfoundBio"); TAE HAN ("Han"); JULIA GAVRILYUK ("Gavrilyuk"); and DOES 1–10 (all defendants, collectively, "Defendants") and alleges as follows.

**INTRODUCTION**

1. This case involves the misappropriation of AbbVie's trade secrets and confidential information related to cancer therapies known as antibody drug conjugates ("ADCs"). For years, ProfoundBio attempted (and failed) to produce a viable ADC pipeline. Instead of doing the hard work necessary for success, ProfoundBio took a shortcut with the help of two ex-AbbVie employees, Drs. Tae Han and Julia Gavrilyuk. Armed with AbbVie's trade secrets and confidential

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

information, ProfoundBio turned its luck around, filing patent applications and advancing a clinical pipeline that prominently feature what it characterized as its single "solution" to the challenge of ADC development: designing ADCs with "hydrophilic linkers with proven payloads." (Ex. A at 10). Critically, however, the hydrophilic linkers that ProfoundBio touted, patented, and incorporated into its lead clinical asset (Rina-S) and its pipeline include AbbVie's trade secrets and confidential information.

2. Eager to cash out, ProfoundBio continued to advertise AbbVie's trade secrets as the key distinguishing feature of its pipeline assets. ProfoundBio's statements, patent applications, and clinical candidates attracted the attention of Genmab, an international biotechnology company. Genmab performed due diligence to assess ProfoundBio's technology, intellectual property, and assets to determine whether ProfoundBio was worth acquiring. Genmab's diligence was extensive: it retained three different law firms to advise it throughout the acquisition process, and Genmab's Chief Financial Officer emphasized publicly the sweeping and meticulous nature of Genmab's scrutiny.

3. During its diligence, Genmab honed in on the precise features that ProfoundBio, Dr. Han, and Dr. Gavrilyuk stole from AbbVie. Indeed, Genmab's top executives describe the differentiating feature of Rina-S as the "direct result of the novel proprietary hydrophilic linker technology developed by ProfoundBio." (Ex. B at 2). Genmab's Chief Medical Officer put a finer point on it, unequivocally admitting that the only innovative aspect of the ProfoundBio linker technology "is the very heavy use of Sorbitol in order to increase the hydrophilicity." (Ex. C at 19). After completing its diligence, Genmab acquired ProfoundBio for $1.8 billion USD in May 2024, securing rights to ProfoundBio's technology, patents, and ADC pipeline that directly stem from its theft of AbbVie's hard-earned trade secrets and confidential information.

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## NATURE OF THE ACTION

4. ProfoundBio, a biotechnology startup, was co-founded in 2018 by ex-AbbVie employee Dr. Han. Although ProfoundBio was an ADC-focused startup, it had a problem. By 2021, ProfoundBio had yet to develop its own viable ADC linker design, and hence had no ADC capable of entering clinical trials. Rather than do the hard work required to create its own linker, ProfoundBio and its co-founder and COO, Dr. Han, turned to Dr. Han's former colleague at AbbVie, Dr. Gavrilyuk. Dr. Han and Dr. Gavrilyuk overlapped in their employment at AbbVie's South San Francisco site from 2016-2017, and, before that, at Stemcentrx, Inc. ("Stemcentrx") from 2014-2016. Both Dr. Han and Dr. Gavrilyuk signed employee agreements with AbbVie in 2016.

5. Dr. Han was aware that Dr. Gavrilyuk's work at AbbVie involved precisely the type of ADC linkers that Dr. Han and ProfoundBio needed. Indeed, since at least 2015, Dr. Han was a member of a Stemcentrx (and later AbbVie) internal effort to develop ADC technology—called "Toxin Hunt"—through which both Dr. Han and Dr. Gavrilyuk attended technical meetings, shared technical development updates, and received development summaries. Moreover, from June 2016 to December 2020, when Dr. Gavrilyuk terminated her employment with AbbVie, Dr. Gavrilyuk was a Senior Principal Research Scientist, Discovery Chemistry. Dr. Gavrilyuk oversaw AbbVie's ADC discovery chemistry working group at the AbbVie Stemcentrx site. Dr. Gavrilyuk was also a core member of Stemcentrx and AbbVie's "Toxin Hunt" ADC development effort. Dr. Han and Dr. Gavrilyuk worked closely together on ADC development while at Stemcentrx and AbbVie and regularly shared technical details of their respective teams' work.

6. While overseeing AbbVie's ADC chemistry working group, Dr. Gavrilyuk worked closely with Dr. Stefan Munneke, who directly reported to Dr. Gavrilyuk. A carbohydrate (sugar) chemist by training, Dr. Munneke had the novel idea to use open-chain sugars as solubility enhancing units in ADC linkers. He implemented this idea by designing and synthesizing novel

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

ADC linkers including unique linkers incorporating two open-chain saccharide (sugar) substitutions on an amine group ("Sugar Scaffold"). Dr. Munneke's conceptual development and synthesis of these structures all occurred while working for AbbVie and while reporting to Dr. Gavrilyuk. Due to her relationship with Dr. Munneke and her overseeing the ADC discovery chemistry team, Dr. Gavrilyuk was well-versed in AbbVie's trade secret Sugar Scaffold features and related designs. She knew AbbVie's ADC linkers, including those with the Sugar Scaffold features and related designs, were trade secret and confidential—as evidenced by internal communications and other AbbVie records—and likewise she knew the substantial economic value of AbbVie trade secret information.

7. Dr. Gavrilyuk left AbbVie in December 2020 and was quickly recruited by Dr. Han and ProfoundBio. In April 2020, more than 6 months before her official exit from AbbVie, Dr. Gavrilyuk joined a start-up incubator called Deep Valley Labs LLC ("Deep Valley Labs"). Dr. Gavrilyuk did not inform AbbVie of her affiliation with Deep Valley Labs. To this day, Dr. Gavrilyuk touts herself as a "Co-Founder-in-Residence" at Deep Valley Labs. *See Our Team,* DEEP VALLEY LABS, https://dvlabs.co/our-team/ (last accessed Mar. 21, 2025). As a Co-Founder-in-Residence, Dr. Gavrilyuk purports to support fledgling start-ups like Dr. Han's ProfoundBio: "We believe that all start-ups begin as a collection of hypotheses. As co-founders, we work with entrepreneurs to systematically validate those hypotheses, ensuring nascent ideas turn into thriving startups. When a venture, or proto-startup, is prepared for spin out, founders working with Deep Valley Labs see higher rates of success because the core technical and business hypotheses have already been validated." *See* DEEP VALLEY LABS, https://dvlabs.co/ (last accessed Mar. 21, 2025).

8. In or around 2021, by exploiting the relationship Dr. Han had developed with Dr. Gavrilyuk while they were both working for Stemcentrx and AbbVie, Dr. Han and ProfoundBio knowingly and intentionally encouraged and enticed Dr. Gavrilyuk to disclose

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

AbbVie's stolen trade secret Sugar Scaffold ADC linkers and related designs. The common goal between Dr. Gavrilyuk, Dr. Han, and ProfoundBio was to use AbbVie's trade secrets—including trade secrets relating to AbbVie's Sugar Scaffold ADC linkers and related designs—to get ProfoundBio's ADC program unstuck and circumvent years of technically demanding development work. In so doing, both Dr. Han and Dr. Gavrilyuk breached their 2016 employee agreements with AbbVie as well as other duties of confidentiality and loyalty, which required both Dr. Han and Dr. Gavrilyuk to maintain and protect AbbVie's trade secrets and confidential information even after their AbbVie employment ended.

9.      Blatantly ignoring their contractual agreements and other obligations to protect AbbVie's trade secret rights, Dr. Han and Dr. Gavrilyuk proceeded to steal AbbVie's Sugar Scaffold and related trade secrets, disclose them to other scientists at ProfoundBio, and use them to fuel ProfoundBio's ADC pipeline. ProfoundBio started filing patent applications in July 2021 which (1) name Dr. Gavrilyuk and Dr. Han as inventors and (2) disclose AbbVie's trade secret Sugar Scaffold ADC linkers without AbbVie's knowledge or consent. As of the filing of this Complaint, Dr. Gavrilyuk and Dr. Han appear as named inventors on at least two families of patent applications assigned to ProfoundBio that include at least fifteen pending applications in the United States and other countries, including international applications that disclose and claim AbbVie's Sugar Scaffold and related trade secrets without AbbVie's consent. Even after filing those applications, ProfoundBio continues to use AbbVie's trade secrets without AbbVie's consent.

10.      And ProfoundBio did more than just try to patent AbbVie's inventions for itself. No later than July 2021, ProfoundBio began to advertise to the world that it had developed a "[n]ext-generation drug linker technology platform" that was "being developed by industry-renowned ADC experts." (Ex. D at 2). Absent from ProfoundBio's statements was any hint that this technology belonged to AbbVie. Moreover, ProfoundBio used AbbVie's Sugar Scaffold features and related designs to develop Defendants' Phase II clinical candidate ADC, known as

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

rinatabart sesutecan (“Rina-S,” also called “PRO1184”). If approved by the FDA, Rina-S would be a direct competitor to ELAHERE®, an AbbVie commercial ADC product. The linker-drug in Rina-S, which is known as LD038 or sesutecan, incorporates AbbVie’s Sugar Scaffold and related trade secrets, including key features that are copied atom-for-atom. ProfoundBio uses the same linker-drug found in Rina-S (LD038) in two other clinical and pre-clinical candidates known as PRO1160 and PRO1286. ProfoundBio further passes off stolen AbbVie trade secret information as its own proprietary technology in investor materials and scientific literature. For example, numerous promotional materials by ProfoundBio tout the “novel” linker of Rina-S as being the key technical feature of the ADC and as the “solution” to the problem ProfoundBio was facing in ADC drug development. (*E.g.*, Ex. A at 10, 11; Ex. E at 4, 5).

11. Consistent with ProfoundBio’s statement that it used AbbVie’s trade secret technology to develop its “platform,” ProfoundBio has also used AbbVie’s trade secrets to create other linker-drugs for other clinical candidates. This includes ProfoundBio’s Phase I/II clinical candidate ADC known as PRO1107. The linker-drug in PRO1107, known as LD343, incorporates AbbVie’s Sugar Scaffold and related trade secrets, including key features that are copied atom-for-atom. And even though it is based on AbbVie’s trade secrets, ProfoundBio passes off the linker-drug of PRO1107 as “ProfoundBio’s novel, proprietary hydrophilic MMAE-based linker drug, LD343.” (Ex. F).

12. Unsurprisingly, ProfoundBio doubled down on its statements showcasing its “platform” linker that is based on AbbVie’s trade secrets. That is because ProfoundBio publicly admits that its products use validated or proven payloads. (Ex. A; Ex. E). Indeed, ProfoundBio repeatedly states that the novelty of its technology and Rina-S stems from the “highly hydrophilic and stable cleavable linkers.” (Ex. E at 5). In January 2023, ProfoundBio characterized its single “solution” to the challenge of ADC development as “hydrophilic linkers with proven payloads.” (Ex. A at 10).

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

13. ProfoundBio's public statements, patent applications, and clinical candidates—built on misappropriated AbbVie trade secrets and confidential information—attracted the attention of Genmab. As Genmab's Executive Vice President and Chief Financial Officer, Anthony Pagano, stated: "ProfoundBio and indeed, Rina-S, really stood out. Based upon the overall profile of both the compound as well as the ADC technology more broadly." (Ex. C at 15). Other senior executives at Genmab have specifically called out ProfoundBio's purported platform technology that it built with AbbVie's trade secrets. For example, Genmab's Chief Medical Officer, Tahamtan Ahmadi, stated: "We believe that Rina-S has the potential to broaden, deepen, and consequently expand activity beyond what has been seen with FRα approaches. In addition, it has shown a potentially differentiated safety profile in clinical development thus far. This potential differentiation ***is a direct result of the novel proprietary hydrophilic linker technology developed by ProfoundBio.***" (Ex. B at 2) (emphasis added). Likewise, Genmab's Chief Executive Officer, Jan van de Winkel commented on the basis for Rina-S's differentiation: "In addition to efficacy, there's also a differentiated safety profile, avoiding interstitial lung disease, or ILD, and corneal toxicities, which is seen with other ADC therapies. This differentiation, both in efficacy and in safety ***is a direct result of the novel proprietary hydrophilic linker technology developed by ProfoundBio.***" (Ex. G at 3) (emphasis added). Putting a finer point on it, Genmab's Chief Medical Officer unequivocally admitted that the only innovative aspect of the ProfoundBio linker technology "is the very heavy use of Sorbitol in order to increase the hydrophilicity." (Ex. C at 19) ("Essentially, there are 3 components to a linker. And if you look at the ProfoundBio linker ***the only part that is really differentiated and that then makes the difference is the very heavy use of Sorbitol in order to increase the hydrophilicity*** if you will at the middle part of the linker [indiscernible] antibody, on the cancer -- the payload and then the middle part. ***That really is a proprietary technology. The 2 other components are essentially off the shelf.***") (emphases added).

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

14. Prior to acquiring ProfoundBio for $1.8 billion USD, Genmab conducted extensive diligence. Genmab's diligence specifically scrutinized both ProfoundBio's technology and its intellectual property. And Genmab publicly emphasized the thoroughness of its scrutiny. By way of example, during the April 3, 2024 conference call, an analyst asked Genmab about its process for vetting a company in the ADC industry. Genmab's Chief Financial Officer replied: "[L]et's be rest assured, [the ProfoundBio acquisition] is something that we really, really studied very, very carefully. The tons of bottom work on the company and the assets and the technology[.]" (Ex. C at 15). As suggested by the Chief Financial Officer's reference to technology, this "very, very carefu[l]" review included specific scrutiny on intellectual property. In fact, Genmab retained three law firms to advise it on multiple aspects of the transaction. (Ex. H at 2).

15. But ProfoundBio's rapid pipeline development after years of stagnation alone should have undoubtedly raised diligence flags. What is more, Genmab's singular focus on ProfoundBio's key differentiating feature—its highly hydrophilic linkers and heavy use of sorbitol—was a focus of the diligence. Even more alarming, ProfoundBio's patent applications—which were a central focus of Genmab's diligence—name two ex-AbbVie employees as inventors, one of whom (Dr. Gavrilyuk) had ended her employment with AbbVie ***less than six months*** prior to the earliest patent application filing date.

16. Based on industry standards and practices regarding trade secrets and confidentiality in the drug develop space, and based on its extensive diligence, Genmab knew, reasonably had reason to know, or was willfully blind to the fact that it acquired the AbbVie ADC Trade Secrets from ProfoundBio, Dr. Han, and/or Dr. Gavrilyuk without authorization from AbbVie and thus by improper means. To the extent Genmab's diligence was inadequate or not as thorough as Genmab's public statements suggest, Genmab was intentionally and willfully blind to the misappropriation perpetrated by ProfoundBio, Dr. Han, and/or Dr. Gavrilyuk.

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

17.     With full information from its diligence, or acting with intentional and willful blindness, Genmab acquired ProfoundBio for $1.8 billion USD in May 2024. Because Genmab acquired ProfoundBio, the facts of the misappropriation perpetrated by ProfoundBio, Dr. Han, and/or Dr. Gavrilyuk would be apparent to Genmab as ProfoundBio's parent company, regardless of its diligence. Based on public statements (including the non-limiting examples discussed above) and ongoing efforts to conduct clinical evaluations, Genmab has confirmed its intention to benefit from ProfoundBio's patent applications and clinical assets that it acquired which include or are built upon misappropriated AbbVie trade secrets and confidential information for Genmab's own financial benefit.

18.     ProfoundBio's meteoric rise from a humble startup to a billion-plus dollar target in just a few years is a direct result of its trade secret misappropriation and other illegal acts knowingly perpetrated by Defendants.

19.     AbbVie now faces the prospect of directly competing with a product that would not exist but for the misappropriation of AbbVie's trade secrets. For example, ProfoundBio has obtained fast-track status for Rina-S/PRO1184 by the United States Food and Drug Administration ("FDA"). As discussed, Genmab is now conducting additional clinical trials of Rina-S/PRO1184, and anticipates FDA approval by 2027. And in January 2025, Genmab announced an "Expanded Vision for Rina-S" as a "Potential Best-in-class Treatment for Ovarian Cancer and Other FRα-expressing Tumors." Genmab described ongoing Phase I/II dose escalation/expansion in trials for solid tumors and ongoing studies in combination cohorts.

20.     Defendants' misappropriation of AbbVie's trade secrets and confidential information has deprived AbbVie of its rightful sole and exclusive ownership and possession of its trade secrets, confidential information, and inventions. Justice demands that Defendants pay for what they stole from AbbVie.

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

**THE PARTIES**

21. AbbVie Inc. is a corporation organized and existing under the laws of Delaware with its principal place of business located at 1 North Waukegan Road, North Chicago, Illinois 60064.

22. Defendant Genmab A/S is a public limited liability company (Aktieselskab) associated under the laws of Denmark with its principal place of business at Carl Jacobsens Vej 30, 2500 Valby, Denmark.

23. Defendant ProfoundBio US Co. is a corporation organized and existing under the laws of Delaware with its principal place of business located at 401 Terry Avenue N., Seattle, WA 98109. As of May 21, 2024, ProfoundBio US Co. operates as a wholly owned subsidiary of Genmab A/S.

24. Defendant ProfoundBio (Suzhou) Co., Ltd. is a corporation organized and existing under the laws of China with its principal place of business located at 1 Xinze Road SIP, Suzhou, China. ProfoundBio (Suzhou) Co., Ltd. is an R&D center affiliated with ProfoundBio US Co. Haidong Liu, an employee, agent, and/or consultant of ProfoundBio (Suzhou) Co., Ltd., is listed as a co-inventor on the following ProfoundBio patent applications: International Application No. PCT/CN2022/104174 (published on January 12, 2023 as WO 2023/280227 A2) ("'227 PCT"); International Application No. PCT/US2023/077814 (published on May 2, 2024 as WO 2024/092067 A1) ("'067 PCT"); International Application No. PCT/CN2024/071901 (published on July 18, 2024 as WO 2024/149345 A1 ("'345 PCT"); and International Application No. PCT/US2024/011307 (published on July 18, 2024 as WO 2024/151890 A1 ("'890 PCT")). The foregoing applications list ProfoundBio (Suzhou) Co., Ltd.'s address as Haidong Liu's address. As of May 21, 2024, ProfoundBio (Suzhou) Co., Ltd. operates as a wholly owned subsidiary of Genmab A/S.

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

25. Defendant Tae Han is an individual residing at 14005 156th Pl. NE, Woodinville, WA, 98072 which is in this District. Dr. Han began working for Stemcentrx in 2014 and became an AbbVie employee in 2016 when AbbVie acquired Stemcentrx. Upon acceptance of his employment with AbbVie, Dr. Han signed an employee agreement with AbbVie in 2016. Dr. Han left AbbVie in 2017. Dr. Han is a co-founder of ProfoundBio, and served on its board, as its president, as its Chief Strategy Officer, and as its Chief Operating Officer from at least 2020 to 2023. Dr. Han, along with Dr. Gavrilyuk, is listed as a co-inventor on the ’227 PCT and the ’067 PCT. Dr. Han and ProfoundBio encouraged and induced Dr. Gavrilyuk to use and disclose AbbVie’s trade secret and confidential ADC technology, including the Sugar Scaffold features, in Washington without AbbVie’s consent, despite knowing that both Dr. Han and Dr. Gavrilyuk had contractual and other obligations to AbbVie to maintain the secrecy of AbbVie’s trade secret and confidential ADC technology.

26. Defendant Julia Gavrilyuk is an individual residing at 13252 Capstone Dr., San Diego, CA, 92130. Dr. Gavrilyuk began working for Stemcentrx in 2012 and became an AbbVie employee when she signed a new AbbVie employee agreement in 2016, after AbbVie acquired Stemcentrx. Dr. Gavrilyuk’s employment with AbbVie overlapped with Dr. Han’s entire tenure at Stemcentrx and AbbVie. She left AbbVie in December 2020. In April 2020, Dr. Gavrilyuk began working for a start-up incubator, Deep Valley Labs, without informing AbbVie. Patent applications containing misappropriated AbbVie trade secret information naming Dr. Gavrilyuk as a co-inventor were filed by ProfoundBio within months of Dr. Gavrilyuk’s official departure from AbbVie. ProfoundBio, including at least Dr. Gavrilyuk’s co-inventors Defendant Han, Xiao Shang (a co-founder of ProfoundBio), Baiteng Zhao (former CEO of ProfoundBio), and Zhu Chen (Chief Scientific Officer of ProfoundBio) were based in Washington and communicated with Dr. Gavrilyuk and encouraged and induced her to use and disclose AbbVie’s trade secret and

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

confidential ADC technology, including the Sugar Scaffold feature, in Washington, knowing she had contractual and other obligations to AbbVie to maintain its secrecy.

27. At present, AbbVie does not know all the true names and capacities of additional entities and individuals involved in the wrongdoing alleged herein, including the filing of patent applications disclosing AbbVie's trade secrets. Therefore, AbbVie sues them under the fictitious names DOES 1–10. While the complete list of wrongdoers and co-conspirators likely extends beyond the co-conspirators identified here, at least DOES 1–10 encouraged and induced Dr. Gavrilyuk to disclose AbbVie's trade secret and confidential ADC technology, including the Sugar Scaffold feature, knowing she had an obligation to AbbVie to maintain their secrecy. AbbVie will amend its pleadings to identify and state applicable claims, as appropriate, against additional entities and individuals as relevant information becomes available through investigation and discovery.

28. AbbVie alleges that each Defendant was the agent, servant, employee, joint venture, partner, subsidiary, and/or co-conspirator of each other Defendant, and that, in performing or omitting to perform the acts alleged here, each was acting individually as well as through and in the foregoing alleged capacity and within the course and scope of such agency, employment, joint venture, partnership, subsidiary, and/or conspiracy, and every Defendant ratified and affirmed the acts and omissions of the other defendants.

29. Each Defendant, in taking the actions alleged here and/or ratifying the actions alleged here, acted within the course and scope of such agency and, at the same time, for personal financial and individual gain, as well as in the course and scope of such employment, acted as an alter ego therein.

30. Whenever this Complaint refers to any actions of Genmab, such allegations shall mean that the directors, officers, managers, employees, or agents of Genmab and/or its subsidiaries,

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

performed or authorized the alleged acts or actively engaged in the management, direction, and control of such entity and were acting within the course and scope of their employment.

31. Whenever this Complaint refers to any actions of ProfoundBio, such allegations shall mean that the directors, officers, managers, employees, or agents of ProfoundBio and/or its subsidiaries, performed or authorized the alleged acts or actively engaged in the management, direction, and control of such entity and were acting within the course and scope of their employment.

32. Each of the co-conspirators referenced in this Complaint was an agent, conspirator, aider, or abettor of one or more of the other defendants.

33. The acts and omissions of each alleged co-conspirator were performed within the course and scope of that agency, conspiracy, aiding, or abetting.

34. At all relevant times, Defendants were each acting with one or more of the co-conspirators pursuant to a common scheme, course of action, enterprise, or conspiracy.

35. As used in this Complaint, the term "co-conspirators" refers collectively to all the named Defendants, including the DOE defendants.

## JURISDICTION AND VENUE

36. This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1331 because AbbVie asserts federal claims under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, et seq. This Court further has subject matter jurisdiction over this matter under 28 U.S.C. § 1367 because AbbVie's federal claims and state-law claims arise out of a common nucleus of operative facts.

37. The Court has specific personal jurisdiction over Genmab A/S because Genmab A/S has sufficient intentional minimum contacts with the District arising out of and related to the continued use of AbbVie's trade secret information. Genmab A/S purposefully directed its activities to Washington and purposefully availed itself of the privileges of conducting business in

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Washington by consummating a transaction with ProfoundBio, including with ProfoundBio US Co., a company headquartered in Seattle, Washington. Moreover, as discussed above, Genmab A/S conducted extensive diligence before consummating its acquisition of ProfoundBio, including with ProfoundBio U.S. Additionally, Genmab A/S's diligence focused on patent applications and clinical assets which include or are built upon misappropriated AbbVie trade secrets and confidential information.

38. In the alternative, this Court also has personal jurisdiction over Genmab A/S under Federal Rule of Civil Procedure 4(k)(2) because (i) AbbVie's claims arise under federal law; (ii) Genmab A/S is a foreign defendant not subject to general personal jurisdiction in the courts of any state; and (iii) exercising jurisdiction is consistent with the United States Constitution and laws, or is co-extensive with the limits of the Due Process Clause of the United States Constitution because (a) Genmab A/S has sufficient contacts in the United States as a whole (and even in this judicial district), including, but not limited to, consummating a transaction with ProfoundBio, including with ProfoundBio US Co., a company headquartered in Seattle, Washington, (b) AbbVie's claims arise out of Genmab's forum-related activities, including Genmab's use of AbbVie's trade secret and confidential ADC technology without AbbVie's consent in research and development, as well as ongoing United States-based clinical investigations to support regulatory approval, and (c) and the exercise of jurisdiction over Genmab comports with fair play and substantial justice.

39. This Court has general personal jurisdiction over ProfoundBio US Co., who resides in this District and maintains a principal place of business in this District. This Court also has specific personal jurisdiction over ProfoundBio US Co. because ProfoundBio US Co. has created sufficient intentional minimum contacts with this District arising out of and relating to its misappropriation of AbbVie's trade secrets and confidential information by encouraging and enticing Dr. Gavrilyuk to disclose AbbVie's trade secrets and confidential information without AbbVie's consent and in contravention of her contractual obligation to keep AbbVie's trade secret

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

information confidential, and by conspiring with Dr. Gavrilyuk to use and further disclose those trade secrets and confidential information in this District to residents of this District. In so doing, ProfoundBio US Co. knew, or had reason to know, that it was encouraging Dr. Gavrilyuk to disclose and use AbbVie trade secrets and confidential information in violation of her ongoing obligations to AbbVie to maintain their confidentiality, resulting in harm to AbbVie in Washington and nationally. ProfoundBio US Co., either directly or through one or more of its affiliates or agents under its direction, has also purposefully availed itself of the privilege of doing business in Washington, with intentional conduct directed at this District for the reasons previously described and including by purposefully communicating with and entering into a business relationship with Dr. Gavrilyuk in this District for purposes of obtaining AbbVie's trade secret and confidential ADC technology and incorporating it into the '227 PCT and the '067 PCT filed on ProfoundBio US Co.'s behalf, as well as later-filed applications such as the '345 PCT and the '890 PCT. Through these communications, it also knowingly induced or coerced Dr. Gavrilyuk to violate her employee agreement with AbbVie.

40.     This Court has specific personal jurisdiction over ProfoundBio (Suzhou) Co., Ltd. because ProfoundBio (Suzhou) Co., Ltd. has created sufficient intentional minimum contacts with this District arising out of and relating to Dr. Gavrilyuk and ProfoundBio (Suzhou) Co., Ltd.'s theft of trade secrets in this District, which ProfoundBio (Suzhou) Co., Ltd. encouraged, knew, or had reason to know was in violation of Dr. Gavrilyuk's ongoing obligations to AbbVie to maintain confidentiality. Moreover, ProfoundBio (Suzhou) Co., Ltd. extensively communicated (via phone calls, the internet and/or in person) with ProfoundBio US Co., Dr. Han, and/or other individuals located in Washington to discuss and use the AbbVie trade secrets at issue here, incorporate them into the '227 PCT, the '067 PCT, the '345 PCT, and the '890 PCT, and prepare the patents for filing and public disclosure of the stolen AbbVie trade secret information without AbbVie's consent. ProfoundBio (Suzhou) Co., Ltd. also has purposefully availed itself of the privilege of

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

doing business in Washington with intentional conduct directed at this District. For example, ProfoundBio (Suzhou) Co., Ltd. conducted research and development in tandem with ProfoundBio US Co., located in Washington, and used AbbVie's trade secret and confidential ADC technology in research and development to support submitting a patent application on behalf of ProfoundBio US Co. which resides in this district by and through, at minimum, its employee, agent, and/or consultant, Haidong Liu, who is listed as a co-inventor on the '227 PCT, the '067 PCT, the '345 PCT, and the '890 PCT, and provides ProfoundBio (Suzhou) Co., Ltd.'s address—Suite 101 & 102, Bldg. 1, P3A 1 Xinze Street, SIP, Suzhou, Jiangsu 215123 (CN)—as their own.

41.    In the alternative, this Court also has personal jurisdiction over ProfoundBio (Suzhou) Co., Ltd. under Federal Rule of Civil Procedure 4(k)(2) because (i) AbbVie's claims arise under federal law; (ii) ProfoundBio (Suzhou) Co., Ltd. is a foreign defendant not subject to general personal jurisdiction in the courts of any state; and (iii) exercising jurisdiction is consistent with the United States Constitution and laws, or is co-extensive with the limits of the Due Process Clause of the United States Constitution, because (a) ProfoundBio (Suzhou) Co., Ltd. has sufficient contacts in the United States as a whole (and even in this judicial district), including, but not limited to, conducting research and development in tandem with ProfoundBio US Co. located in Washington, (b) using AbbVie's trade secret and confidential ADC technology without AbbVie's consent in research and development to support filing of patent applications in the United States as an Applicant and using a United States law firm (Wilson Sonsini Goodrich & Rosati), having offices throughout the United States, including in Washington at 701 Fifth Avenue, Suite 5100, Seattle, WA 98104-7036, and having its address—Suite 101 & 102, Bldg. 1, P3A 1 Xinze Street, SIP, Suzhou, Jiangsu 215123 (CN)—listed as the address for a co-inventor, its employee, agent or consultant, on the '227 PCT, the '067 PCT, and the '890 PCT filed in the United States, and (c) the exercise of jurisdiction over Genmab comports with fair play and substantial justice.

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

42. The Court has specific personal jurisdiction over Dr. Gavrilyuk because Dr. Gavrilyuk has created sufficient intentional minimum contacts with this District arising out of and relating to Dr. Gavrilyuk's theft of AbbVie's trade secrets and unconsented disclosure of AbbVie's trade secret information in this District to residents of this District in violation of her ongoing obligations to AbbVie to maintain confidentiality, among other obligations stemming from her employment with AbbVie. Dr. Gavrilyuk conducted business with residents of this District, including becoming the inventor on patents for ProfoundBio US Co. headquartered in this District. Those patent applications list Dr. Gavrilyuk's address as "14241 NE Woodinville-Duvall Rd., #228, Woodinville, Washington 98072 (US)," an address within this District. Dr. Gavrilyuk had knowledge that the information she disclosed to ProfoundBio was trade secret and confidential to AbbVie, and that she did not have AbbVie's consent to disclose it. She also knew that disclosing that information in Washington would harm AbbVie in Washington and nationally, including, but not limited to, because her signed employee agreement with AbbVie specifically states that AbbVie will face irreparable injury if Dr. Gavrilyuk disclosed confidential trade secret information. Beyond being named a coinventor of ProfoundBio US Co. patent applications, Dr. Gavrilyuk had additional contacts with ProfoundBio including coauthoring abstracts and poster presentations with ProfoundBio employees that related to the trade secrets at issue here. Dr. Gavrilyuk also has purposefully availed herself of the privilege of doing business in Washington through her work on behalf of ProfoundBio US Co., with intentional conduct directed at this District, and committed an intentional tort in the District by disclosing AbbVie's trade secret information to a business headquartered in the District and to her co-inventors on the '227 PCT and the '067 PCT, including Defendant Dr. Han, who are located in the District. Dr. Gavrilyuk extensively communicated (via phone calls, the internet and/or in person) with ProfoundBio, Dr. Han, and/or other individuals located in Washington to discuss, disclose, and use the AbbVie trade secrets at issue here,

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

incorporate them into the ’227 PCT and the ’067 PCT, and prepare the patent applications for filing and public disclosure of the AbbVie trade secrets.

43. The Court has general jurisdiction over Dr. Han because he is domiciled in this District, residing at 14005 156th Pl. NE, Woodinville, WA, 98072. This Court also has specific personal jurisdiction over Dr. Han because Dr. Han has created sufficient intentional minimum contacts with this District arising out of and relating to his and Dr. Gavrilyuk’s theft of trade secrets and disclosure in this District to residents of this District, which Dr. Han participated in and encouraged, knew, or had reason to know was in violation of her ongoing obligations to AbbVie to maintain confidentiality, among other obligations stemming from her employment with AbbVie. Dr. Han also lists as his address on the ’227 PCT and the ’067 PCT “14241 NE Woodinville-Duvall Rd., #228, Woodinville, Washington 98072 (US),” an address in this District.

44. Venue in this District is proper as to all Defendants under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims in this Complaint occurred in this District, including Dr. Han and Dr. Gavrilyuk’s improper use and disclosure of AbbVie’s trade secret and confidential ADC technology, including the Sugar Scaffold features and related designs, to ProfoundBio, Dr. Han and her other co-inventors in this District; and listing an address in this District for several of the co-inventors of the ’227 PCT and the ’067 PCT, including Dr. Han and Dr. Gavrilyuk, as well as several of the co-inventors of the ’345 PCT and the ’890 PCT.

45. Venue in this District also is proper as to ProfoundBio (Suzhou) Co., Ltd. It is a foreign corporation under 28 U.S.C. § 1391(b)(3), is subject to personal jurisdiction in this District, as set forth above, and therefore may be sued in any judicial district, 28 U.S.C. § 1391(c)(3).

46. Venue in this District also is proper as to Genmab A/S. It is a foreign public limited liability company under 28 U.S.C. § 1391(b)(3), subject to personal jurisdiction in this District, as set forth above, and therefore may be sued in any judicial district, 28 U.S.C. § 1391(c)(3).

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## FACTUAL ALLEGATIONS

### AbbVie and Its ADC Technology Development Projects

47. AbbVie is a global biopharmaceutical company headquartered in North Chicago, Illinois. AbbVie was formed as an independent company in 2013, following its separation from Abbott Laboratories. AbbVie has a rich, 135-year heritage of developing pharmaceuticals and has grown to be one of the largest biomedical companies in the world, providing life-saving products and services to millions of people. Every year, over 60 million people are treated by AbbVie's products in over 175 countries around the world.

48. AbbVie maintains substantial state-of-the-art research and development (R&D) and manufacturing facilities in over 20 countries, including the United States. AbbVie employs over 55,000 people in over 77 countries and has consistently been recognized as a top company to work for.

49. AbbVie has invested substantial resources globally and in the United States in discovering, identifying, and developing new compounds and drugs for human treatment, including compounds for treating cancer, including ADCs. Among its efforts in developing compounds for treating cancer, AbbVie has invested heavily in the research and development of cancer therapies that are based on ADC technology.

50. For example, AbbVie acquired ImmunoGen, including its flagship ADC cancer therapy ELAHERE® (mirvetuximab soravtansine-gynx), in late 2023. ELAHERE® is a first-in-class ADC targeting folate receptor alpha (FRα) and uses the maytansinoid payload DM4, which is a potent cytotoxic compound that kills the targeted cancer cells. On November 14, 2022, the FDA approved ELAHERE® for treating adult patients with FRα positive, platinum-resistant epithelial ovarian, fallopian tube, or primary peritoneal cancer, who have received one to three prior systemic treatment regimens. AbbVie continues to invest in the development of ELAHERE®, including programs to expand into earlier lines of therapy and enter other large patient segments

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

of the ovarian cancer market in the next decade, including at least three active clinical trials, NCT05456685, NCT06365853, and NCT05445778.

51.    Genmab seeks to position Rina-S/PRO1184, which is also an ADC for treating ovarian cancer and other FRα-expressing solid tumors, as a direct competitor to ELAHERE®. In addition, Defendants are developing other ADCs that are clinical and pre-clinical candidates, namely, PRO1107, PRO1160, and PRO1286, that incorporate AbbVie's trade secrets.

52.    By way of background, ADCs are cutting-edge cancer targeting agents that leverage an antibody's molecular specificity with the lethality of an anti-cancer payload to specifically target and destroy cancer cells. ADCs generally comprise three covalently-linked components: (1) a monoclonal antibody (mAb) that binds selectively to the cancer target; (2) a chemical linker that connects the antibody and payload, and that provides critical attributes to the overall ADC to support its safety and efficacy; and (3) a drug payload, which is generally a toxin that destroys the cancer target. This 3-part design provides targeted delivery of the anti-cancer payload directly to cancer cells. A schematic with these components is shown below:



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

53. The three key components of ADCs work together to seek out cancer cells and deliver anti-cancer drugs to destroy them. The antibody component specifically targets molecules often found on the surface of cancer cells called antigens and binds to the antigens. After binding, the ADC is brought inside the cell, where enzymes digest the antibody and the linker, releasing the anti-cancer payload in the cancer cell.

54. An ADC can have multiple drug payloads linked to the antibody component. This relationship is called the drug-to-antibody ratio (or DAR for short). For example, if the antibody component of an ADC is linked to four drug payloads, the ADC has a DAR of 4 (also called DAR4). A schematic of an exemplary DAR4 ADC is shown below:

ADCs with high DAR can be more effective because each ADC is able to deliver multiple copies of the payload to a cell, increasing the overall potency of the therapeutic.

55. A key challenge with ADCs is making them more soluble. Anti-cancer drugs used as payloads are frequently hydrophobic with poor solubility. This property can cause the payloads to interfere with the structure of the antibody, causing the ADC to clump together, or "aggregate," which reduces the ADC's safety and efficacy. This concern about aggregation can increase as DAR increases—as the ADC has more payload components, this increases the chance that the

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

payload will interact with the antibody component and disrupt the antibody structure. Thus, although high DAR can increase potency, DAR must be balanced so as to avoid aggregation. One way to balance this concern is to design linker components that shield the hydrophobic drug payload component from being able to interfere with the antibody component to prevent aggregation and increase solubility.

56. Accordingly, in its ADC technology development projects, AbbVie scientists focused on developing novel linkers to improve the overall ADC solubility and pharmacological performance. AbbVie scientists explored hundreds of different approaches. Along the way, AbbVie scientists discovered linker design features that would prove beneficial and others that would prove to be problematic. Through this work, AbbVie developed valuable trade secrets and confidential information relating to ADC linker structures, including the Sugar Scaffold features and related designs.

57. For example, between at least November 2016 and April 2018, AbbVie scientists designed and developed trade secrets and confidential information relating to soluble ADC linker technology, including the idea of increasing hydrophilicity, enhancing solubility, increasing stability, avoiding aggregation, reducing toxicity, and enhancing ADC efficacy by introducing the Sugar Scaffold features. This is important in ADCs that include a highly hydrophobic anti-cancer drug payload, such as an auristatin-based drug payload or a camptothecin-based topoisomerase I (TOP-1) inhibitor drug payload (such as the payloads found in PRO1107 and Rina-S, respectively).

58. No later than May 10, 2017, Dr. Munneke, an AbbVie scientist, designed, synthesized, and developed AbbVie's trade secret Sugar Scaffold features, which use open chain sugars as solubility enhancing units. In one implementation, the Sugar Scaffold feature included a tertiary amine with two substitutions that are reduced sorbitol (sugar) groups and where the tertiary nitrogen is part of a lysine side chain. Dr. Munneke created different ADC linker designs incorporating Sugar Scaffold features, including other features such as a maleimide antibody

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

attachment site, a valine-citrulline-p-aminobenzoyloxycarbonyl ("VC-PABC") cleavage site, and a "spacer" attached to the Sugar Scaffold feature of the linker. As set forth herein, Defendants misappropriated AbbVie's trade secrets relating to the structure, synthesis, and know-how relating to the use of the Sugar Scaffold features in an ADC linker. Defendants have even touted the LD038 linker of Rina-S/PRO1184, PRO1160, and PRO1286 as their own "proprietary" design—even though that linker comprises AbbVie's trade secrets. Defendants have done the same with the linker-drug of PRO1107 (which includes the linker-drug known as LD343).

59. AbbVie scientists pioneered the use of the Sugar Scaffold features in ADC linkers used with highly hydrophobic anti-cancer drug payloads, such as an auristatin-based drug payload (as in LD343) or a camptothecin-based topoisomerase I inhibitor drug payload (as in LD038). Prior to Defendants' misappropriation, the Sugar Scaffold features were unknown outside of anyone with a confidentiality obligation to AbbVie.

**<u>Dr. Gavrilyuk's Involvement in and Access to AbbVie's ADC Technology Projects</u>**

60. Dr. Gavrilyuk joined Stemcentrx's (and later AbbVie's) ADC technology development projects in or about as early as July 2015. Indeed, as early as July 2015, Dr. Gavrilyuk was a core team member of the Stemcentrx (and later AbbVie) "Toxin Hunt" ADC development effort. Dr. Han was also a member of the "Toxin Hunt" team as of July 2015. Through their "Toxin Hunt" work, Dr. Han and Dr. Gavrilyuk routinely worked together, including attending meetings, sharing ADC technical and development information, and receiving meeting summaries. Dr. Gavrilyuk broadly oversaw ADC technology development projects throughout her employment at AbbVie until December 2020. At that time, she resigned from AbbVie and, ostensibly, began work full-time at Deep Valley Labs. Yet, unknown to AbbVie, Dr. Gavrilyuk had already been working at Deep Valley Labs since April 2020, at least eight months before her departure from AbbVie, where her job was to collaborate with and help start-ups like Dr. Han's ProfoundBio.

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

61. In her role on AbbVie's ADC technology development projects, Dr. Gavrilyuk was regularly and routinely exposed to AbbVie's ADC trade secrets and confidential information. For instance, as a member of the "Toxin Hunt" ADC development effort, Dr. Gavrilyuk was a core team member who participated in and received minutes from technical meetings. Dr. Gavrilyuk participated in frequent and regular team meetings and interactions for ADC technology development projects, where AbbVie's confidential test results and data relating to the AbbVie ADC and ADC linker designs were presented and discussed. These test results and data provided important information correlating ADC and ADC linker designs with pharmacological properties (*e.g.*, potency, bioavailability, efficacy, safety, pharmacokinetics, pharmacodynamics, and/or overall potential as new drug candidates). These results and data showed, *inter alia*, how modifications to the design of each of the ADC and the ADC linker would enhance or detract from pharmacological properties (*e.g.*, potency, bioavailability, efficacy, safety, pharmacokinetics, pharmacodynamics, and/or overall potential as new drug candidates).

62. Dr. Gavrilyuk knew that Dr. Munneke, one of the scientists on her team at AbbVie and her direct report, had invented and developed novel and unique ADC linker designs starting in 2016, including those linker designs utilizing his idea to use open chain sugars to serve as solubility enhancing units. Dr. Gavrilyuk also knew that Dr. Munneke called this novel and unique feature a "Sugar Scaffold." Dr. Gavrilyuk oversaw and worked closely with Dr. Munneke on the design and development of ADC linker designs based on the Sugar Scaffold features.

63. While she was employed at AbbVie and in the course of her work for AbbVie, Dr. Gavrilyuk knew that AbbVie's ADC linker designs with the Sugar Scaffold features were valuable trade secrets that were invented by Dr. Munneke and that belong to AbbVie. For example, on June 2, 2017, she emailed Dr. Munneke and asked him to put together a document "for the synthesis of your sugar scaffold and send it to me." And she specifically asked him to "[p]lease make sure you have 'CONFIDENTIAL' on every page of that document." The document

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Dr. Munneke emailed to Dr. Gavrilyuk included structural features of AbbVie's trade secret Sugar Scaffold designs, including those that appear, atom-for-atom, as an unconsented disclosure in ProfoundBio's patent applications, including the '227 PCT and the '067 PCT.

64. Thus, Dr. Gavrilyuk was clearly aware that AbbVie's ADC trade secrets and confidential information, including AbbVie's ADC linker designs with the Sugar Scaffold features, would be very valuable in the hands of AbbVie's present and potential competitors, such as ProfoundBio and Genmab. Moreover, Dr. Gavrilyuk was aware that AbbVie's ADC trade secrets and confidential information were squarely the kind of information that she had a duty to protect under at least the terms of her employment agreement with AbbVie.

**AbbVie's ADC Trade Secrets**

65. In this Complaint, AbbVie pleads the asserted trade secrets and confidential information owned by AbbVie, and maintained by AbbVie as confidential trade secrets (using at least reasonable measures to maintain secrecy) at all times, that Dr. Gavrilyuk acquired while working for AbbVie on ADC technology development projects, and that Dr. Gavrilyuk, Dr. Han, ProfoundBio, and Genmab knowingly misappropriated by stealing from AbbVie, and using, and disclosing outside of AbbVie without AbbVie's authorization or consent.

66. With respect to AbbVie's identification of its misappropriated trade secrets in this Complaint, AbbVie limits its detailed descriptions to aspects of those trade secrets that have been disclosed by Defendants, without authorization from AbbVie, in ProfoundBio's published patent applications and other publications. In so doing, AbbVie does not waive or limit its rights and remedies, and reserves the right to allege misappropriation of additional trade secrets as they become known through discovery.

67. Prior to Dr. Gavrilyuk's (and Dr. Han's) unauthorized theft, use, and disclosures and Defendants' unauthorized acquisition, use, and disclosures, all of AbbVie's ADC technology-

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

related trade secrets described herein and related confidential information were unknown to anyone without an obligation to AbbVie to maintain their secrecy.

68. As noted above, AbbVie's ADC technology development projects, involved significant research and development into all three ADC components—antibody, linker, and payload. AbbVie invented, designed, developed, synthesized, and tested many ADCs comprising different designs and combinations of designs for antibodies, linkers, and payload compounds. In so doing, AbbVie created and protected numerous valuable trade secrets relating to ADC linkers, including AbbVie's Sugar Scaffold designs.

69. Insofar as this lawsuit is concerned, AbbVie's misappropriated ADC linker trade secrets relate to the use of linkers incorporating disaccharide moieties to improve hydrophilicity of ADC structures. Such linkers can be incorporated into ADCs in a variety of ways, including combining them with spacers, maleimide antibody attachment sites, valine-citrulline-p-aminobenzoyloxycarbonyl ("VC-PABC cleavage site"), and hydrophobic payloads. Examples of AbbVie's misappropriated ADC Trade Secrets include the following:

(i) **The design of the Sugar Scaffold features**. As seen in blue below, an example of the misappropriated trade secret Sugar Scaffold features includes a tertiary amine with two substitutions that are reduced sorbitol (sugar) groups and where the tertiary nitrogen is further attached to a substituted alkyl chain. As discussed below, this trade secret structure shown in blue is found in the LD038 linker-drug component of ProfoundBio's/Genmab's Rina-S drug product (below left) and the LD343 linker-drug component of ProfoundBio's/Genmab's PRO1107 drug product (below right)):

Chemical Formula: $C_{95}H_{149}FN_{12}O_{33}$
Exact Mass: 2089.02
Molecular Weight: 2090.32

PB038

(Drug-Linker 4)

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*LD038*
*(PRO1184, PRO1160, & PRO1286)*

*LD343*
*(PRO1107)*

(ii) **The design of the Sugar Scaffold features configured in an ADC with other features**. Further examples of trade secret misappropriation are shown below in blue, yellow, pink, and green, where the blue designates an example of the Sugar Scaffold features, the yellow designates the attached spacer, the pink designates the maleimide antibody attachment site, and the green designates the VC-PABC cleavage site. The Sugar Scaffold features can be combined in a variety of ways including, but not limited to, the structures indicated with colors below. An example of the misappropriated trade secret as shown in blue, yellow, pink, and green is found in the LD038 linker-drug component of Rina-S (below left) and the LD343 linker-drug component of ProfoundBio's/Genmab's PRO1107 drug product (below right):

*LD038*
*(PRO1184, PRO1160, & PRO1286)*

*LD343*
*(PRO1107)*

(iii) ADC linker-drug designs including a Sugar Scaffold feature and one or more of a spacer, a maleimide antibody attachment site, and a VC-PABC cleavage site, as well as a highly hydrophobic payload compound such as an auristatin-based drug payload (such as LD343) or a camptothecin-based topoisomerase I inhibitor drug payload (such as LD038);

(iv) Methods for synthesizing ADC linkers that include Sugar Scaffold features;

(v) Structure and synthesis of antibody-linker-payload combination designs (i.e., ADC designs) that include a linker comprising Sugar Scaffold features and have valuable pharmacological properties;

(vi) know-how, scientific information and data regarding how specific modifications to each of the ADC component designs and combinations thereof affect, positively or negatively, the pharmacological properties of an ADC;

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

(vii) know-how, scientific information and data regarding AbbVie's ADC candidates and plans for developing and optimizing such candidates, based on the pharmacological properties of these ADC compound designs; and

(viii) compilations and descriptions of AbbVie's discoveries relating to the pharmacological properties of ADC designs and how these discoveries factored into AbbVie's plans for its ADC technology development projects.

70. These eight trade secrets are referred to collectively herein below as the "AbbVie ADC Trade Secret(s)."

71. The AbbVie ADC Trade Secrets have been used and disclosed by Defendants in connection with Rina-S/PRO1184 without AbbVie's consent. Rina-S/PRO1184 is an ADC that includes the sesutecan linker-drug component, also known as PB038 or LD038, which incorporates the AbbVie ADC Trade Secrets.

72. In an April 3, 2024 investor presentation, Genmab identified ProfoundBio's "Linker-payload" of Rina-S/PRO1184 as "LD038":

(Ex. I at 5) (emphasis added). In its presentation, Genmab noted that Rina-S has a DAR of 8—thus there are 8 copies of the linker-drug component per ADC.

73. Sesutecan, also known as PB038 or LD038, is the linker-drug component of Rina-S/PRO1184. LD038 was disclosed in ¶¶ [0616]-[0617] of the '227 PCT (Ex. J), and includes a Sugar Scaffold feature (shown in blue) as well as a spacer (yellow), a maleimide antibody attachment site (pink), and a VC-PABC cleavage site (green):

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900



Exact Mass: 2089.02
Molecular Weight: 2090.32

PB038

74. Defendants have also used and disclosed the LD038 linker-drug component in the PRO1160 and PRO1286 products without AbbVie's consent.

75. The AbbVie ADC Trade Secrets have also been used and disclosed by ProfoundBio and Genmab in connection with PRO1107 without AbbVie's consent. LD343 is the linker-drug component of PRO1107. The '345 PCT (Ex. K) discloses LD343 in ¶¶ [0534], [0748]-[0749], and [0753] as "Drug-Linker 4" and "LD343," including a Sugar Scaffold feature (shown in blue) as well as a spacer (yellow), a maleimide antibody attachment site (pink), and a VC-PABC cleavage site (green):

(Drug-Linker 4)

76. The trade secrets and confidential information created and developed in AbbVie's ADC technology development projects were invented and developed by AbbVie employees, including Dr. Munneke, who were acting within the course and scope of their employment for

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

AbbVie, using AbbVie resources. In addition, pursuant to Section 5 of Dr. Munneke's employee agreement with AbbVie, he automatically assigned all of his right, title, and interest to all inventions, whether patentable or not, that he invented during his employment with AbbVie. Accordingly, AbbVie owns the AbbVie ADC Trade Secrets.

77. The AbbVie ADC Trade Secrets are among the trade secrets misappropriated by Defendants, as discussed above and further below.

78. Prior to the unconsented disclosure and use by Defendants, the AbbVie ADC Trade Secrets and related confidential information were not in the public domain, nor were they matters of general knowledge in the trade or of special persons who are skilled in the trade.

79. As discussed below, Dr. Gavrilyuk (with Dr. Han's participation and encouragement) stole, used, and disclosed the AbbVie ADC Trade Secrets and confidential information to Dr. Han and ProfoundBio without authorization or consent from AbbVie on or before July 6, 2021. In concert with Dr. Gavrilyuk and also without authorization or consent from AbbVie, Dr. Han and ProfoundBio copied and/or derived, and then used and disclosed, the AbbVie ADC Trade Secrets and related confidential information, including the AbbVie ADC Trade Secret designs, in patent applications that ProfoundBio filed after Dr. Gavrilyuk left AbbVie, including the '227 PCT, the '067 PCT, the '345 PCT, and the '890 PCT.

80. While employed by AbbVie and leading its ADC technology development projects Dr. Gavrilyuk worked directly with and/or knew of the ADC linker designs that ProfoundBio would later copy and/or derive from the AbbVie ADC Trade Secrets and related confidential information that Dr. Han and ProfoundBio obtained from Dr. Gavrilyuk.

81. The ADC linker designs that ProfoundBio copied and/or derived from the AbbVie ADC Trade Secrets and related confidential information vary significantly from the ADC linker designs generally known and commonly used in the field prior to AbbVie's discoveries.

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

82. The AbbVie ADC Trade Secrets differ from what was known in the field and enable substantial improvements in ADC pharmacological properties (*e.g.*, potency, bioavailability, efficacy, safety, pharmacokinetics, pharmacodynamics, and/or overall potential as new drug candidates). Specifically, the AbbVie ADC Trade Secrets comprise different chemical structures as compared to what was generally known in the field. The AbbVie ADC Trade Secrets do not appear in any materials made public by ProfoundBio prior to their receipt of the AbbVie ADC Trade Secrets from Dr. Gavrilyuk. For example, AbbVie's trade secret ADC linker designs contain the Sugar Scaffold features, a previously unknown structural moiety in this ADC category. AbbVie's trade secret linker designs also combine the Sugar Scaffold features with other features, including one or more of a spacer, a maleimide antibody attachment site, and a VC-PABC cleavage site. The Sugar Scaffold features, either alone or in combination with one or more of these other features, were not known in the relevant field and were trade secrets when Dr. Gavrilyuk used and disclosed them to ProfoundBio as early as July 6, 2021.

**AbbVie's Trade Secrets Are Valuable, and AbbVie Protected Their Secrecy**

83. Biopharmaceutical companies, such as AbbVie, depend on confidential R&D programs to develop innovative products and services, including ground-breaking research and development of new and useful chemical structures and ways to make products that include them, like the Sugar Scaffold. Failures can also provide valuable information because they teach companies about dead ends or likely unfruitful pursuits that should be avoided, thereby saving substantial time and money in research investments.

84. The intellectual property created during this research process, regardless of whether it directly results in a commercial product, constitutes valuable assets of companies like AbbVie. If a competitor improperly acquires a company's intellectual property, that provides the competitor with an unfair and unjust advantage in the market, because the competitor can avoid expending resources, engaging in a lengthy R&D process, and contending with the uncertainty of success.

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Such improper acquisition by a competitor also deprives the company that owns the intellectual property of the full economic value or potential value of its assets. Thus, AbbVie derives value from maintaining the secrecy of its trade secrets, including the AbbVie ADC Trade Secrets.

85. AbbVie's ADC technology development projects involved a significant investment of AbbVie's resources, including funds and personnel, over a multi-year period. AbbVie has spent numerous years and many millions of dollars on its ADC technology development projects, which are ongoing today.

86. The AbbVie ADC Trade Secrets and related confidential information have significant economic value in the market for pharmaceuticals generally and in the market for ADC cancer therapies specifically. Indeed, the ADC market is highly competitive and projected to grow significantly, exceeding several-billion dollars in value.

87. The AbbVie ADC Trade Secrets and related confidential information have independent economic value derived from their secrecy. This value comes from not being generally known to others who can obtain economic value from their disclosure or use, such as those entities (*e.g.*, ProfoundBio (including Dr. Han, its founder) and Genmab) who could use AbbVie's ADC Trade Secrets to save significant time and resources in developing ADCs in order to compete with AbbVie's current and future ADC cancer therapies (*e.g.*, ELAHERE®) discussed above. As shown herein, ProfoundBio saved significant time and resources in developing Rina-S/PRO1184 and its other clinical and pre-clinical candidates, including PRO1160, PRO1286, and PRO1107, by misappropriating AbbVie's ADC Trade Secrets through Dr. Gavrilyuk (with Dr. Han's knowing encouragement and participation). Indeed, as described in Paragraphs 10-14, both ProfoundBio and Genmab have touted the precise features of the linker-technology that stems from the stolen AbbVie trade secrets. Moreover, Genmab, either alone or in concert with ProfoundBio, is conducting multiple clinical evaluations that concern Rina-S/PRO1184, PRO1160, PRO1286, and PRO1107, including within the United States.

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

88.     Genmab, through its public statements and ongoing clinical evaluation of ADCs that include or are built upon misappropriated AbbVie ADC Trade Secrets, has demonstrated its intent to continue to use stolen AbbVie technology for its own financial benefit.

89.     AbbVie protected the substantial value of the AbbVie ADC Trade Secrets and related confidential information by maintaining their secrecy.

90.     At all relevant times, AbbVie took reasonable measures to protect the secrecy of the AbbVie ADC Trade Secrets and related confidential information.

91.     For example, AbbVie has, and at all times relevant to this matter had, written policies and procedures governing its information technology ("IT") and the security of the AbbVie ADC Trade Secrets and related confidential information described above.

92.     AbbVie's policies and procedures for accessing the AbbVie ADC Trade Secrets and related confidential information involve computer controls, limitations on data access, network security, user setup procedures, password administration and management, security audits, security breach investigations, email best practices, and mobile device security.

93.     AbbVie policies governing the AbbVie ADC Trade Secrets and related confidential information require AbbVie employees to maintain these trade secrets and confidential information in confidence and not disclose them to any unauthorized third party.

94.     AbbVie protects the AbbVie ADC Trade Secrets and related confidential information from disclosure in its business dealings with third parties through nondisclosure agreements.

95.     AbbVie limits access to the AbbVie ADC Trade Secrets and its other confidential and proprietary information to certain employees, and it stores the AbbVie ADC Trade Secrets electronically in a secure network system. Indeed, AbbVie protects its ADC Trade Secrets by password protecting certain files containing these trade secrets.

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

96.     AbbVie routinely audits user access to critical shared folders containing the AbbVie ADC Trade Secrets, and each critical function stakeholder must approve the list of personnel with access.

97.     AbbVie's computers are protected from unauthorized access to the AbbVie ADC Trade Secrets through the use of individual usernames and passwords, and employees and managers with access to the AbbVie ADC Trade Secrets must change passwords regularly.

98.     AbbVie's electronic applications containing the AbbVie ADC Trade Secrets require user authentication and also have a session-timeout mechanism in place.

99.     Accessing the AbbVie ADC Trade Secrets via the AbbVie network using a personal computer assigned to an AbbVie employee is allowed upon receiving approval of a request that must be submitted to AbbVie security and information technology professionals.

100.    Personal computers assigned to an AbbVie employee allowed to connect to the AbbVie network to access the AbbVie ADC Trade Secrets must satisfy the company's standard computer security practices and are subject to inspection and monitoring by AbbVie.

101.    Within its facilities, AbbVie restricts building access for areas containing sensitive information, including areas containing the AbbVie ADC Trade Secrets. Access to these areas requires door permissions that are granted only if an individual's job duties require access to these areas.

102.    Access to AbbVie's server rooms with the servers that store the AbbVie ADC Trade Secrets is limited to IT and facilities staff who have been granted access by security professionals, and the list of people who have access is reviewed on a regular basis.

103.    To ensure the security of the AbbVie ADC Trade Secrets and other proprietary, confidential information, AbbVie has licensed encryption software that monitors application and data usage, encrypts sensitive data, and enables auditing for compliance with AbbVie's security policies.

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

104. Exemplifying AbbVie's security measures, AbbVie employees receive training on the company's Code of Business Conduct, which, *inter alia*, states:

> We are especially careful to protect proprietary information—knowledge that AbbVie owns and uses to our competitive advantage in the marketplace, such as trade secrets, manufacturing processes, and business methods. Confidential, proprietary information is used only to do our jobs; we never share it with anyone, inside or outside of AbbVie, who is not authorized to see or hear it.

105. AbbVie employees are also bound by a duty of loyalty to the company and are obligated to act in AbbVie's best interests.

106. No agent or employee of AbbVie who has been entrusted in the course of employment with the AbbVie ADC Trade Secrets may thereafter utilize this secret knowledge against the interests or to the prejudice of AbbVie. Dr. Gavrilyuk, in connection with ProfoundBio and Dr. Han, has done just that.

**Defendants Misappropriated the AbbVie ADC Trade Secrets**

107. Between and among themselves, Defendants conspired to and have misappropriated the AbbVie ADC Trade Secrets and related confidential information stolen, used, and disclosed by Dr. Gavrilyuk without authorization from AbbVie.

108. Defendants are aware that significant resources and experimentation are required to develop a clinical ADC candidate. In or around April 2021, Dr. Han and ProfoundBio were not satisfied with the pace or direction of the development of ProfoundBio's own ADC linker designs.

109. ProfoundBio had only filed two independent applications disclosing or claiming ADC technology. Specifically, ProfoundBio had filed U.S. 63/173,406 on April 10, 2021 (which later published as a related application as WO 2022/217022) and PCT/CN2021/089164 on April 23, 2021 (which later published as a related application as WO 2022/226317) (collectively, the "April 2021 Applications").

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

110.    The April 2021 Applications include generic disclosures of ADC linker-drug compounds, citing examples of such compounds already known in the prior art. The April 2021 Applications confirm that ProfoundBio had not independently developed any viable ADC linker or linker-drug compounds as of April 2021.

111.    By no later than July 2021, ProfoundBio and Dr. Han turned to Dr. Han's former AbbVie colleague, Dr. Gavrilyuk, in the hopes of getting their ADC development program off the ground.

112.    Dr. Han had previously worked with Dr. Gavrilyuk at AbbVie and was aware of the nature of her work with ADCs. Additionally, and by way of example, by at least July 2015, both Dr. Han and Dr. Gavrilyuk were members of Stemcentrx's (and later AbbVie's) "Toxin Hunt" ADC development effort. As part of this effort, both Dr. Han and Dr. Gavrilyuk attended technical meetings, shared technical development updates, and received development summaries of technical work. Based on industry standards and practices, as well as Dr. Han's personal knowledge of AbbVie's employee agreements and its practices and procedures for maintaining secrecy of its confidential and proprietary information, ProfoundBio and Dr. Han both knew or had reason to know that Dr. Gavrilyuk had a duty to AbbVie to maintain the confidentiality of the AbbVie ADC Trade Secrets.

113.    Both ProfoundBio and Dr. Han knew that AbbVie, as a pharmaceutical company, relies on trade secrets and proprietary information and that AbbVie's current and former employees, such as Dr. Gavrilyuk, have a duty to maintain those trade secrets and proprietary information in confidence, both during and following their employment with AbbVie.

114.    Between April and July 2021, Dr. Han and ProfoundBio knew that Dr. Gavrilyuk was no longer an AbbVie employee but rather had been a Co-Founder-in-Residence at Deep Valley Labs for at least seven months. Dr. Han and ProfoundBio also knew that, in the April-July 2021

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

timeframe, Dr. Gavrilyuk did not have her own research facilities and thus had not been developing new technology since leaving AbbVie at the end of December 2020.

115. Accordingly, in the April-July 2021 timeframe, ProfoundBio and Dr. Han knew or had reason to know that any ADC-related technology from Dr. Gavrilyuk came from AbbVie, a source to whom she owed a duty of confidentiality and loyalty (among other obligations).

116. Nevertheless, and in direct contravention of their knowledge that Dr. Gavrilyuk had at least duties of confidentiality and loyalty to AbbVie, ProfoundBio and Dr. Han pursued and encouraged her assistance to solve problems and roadblocks they had encountered in their own ADC development. They believed and expected that Dr. Gavrilyuk's knowledge, use, and disclosure of AbbVie's confidential and proprietary information, including the AbbVie ADC Trade Secrets, could be used by ProfoundBio to materially advance and accelerate ProfoundBio's ADC development. As described below, Dr. Gavrilyuk, Dr. Han, and ProfoundBio moved to develop new linker chemistry, for example, at a pace that is impossible but for the misappropriation described herein.

117. Within just months of connecting with Dr. Gavrilyuk, and just six months following Dr. Gavrilyuk's departure from AbbVie that Dr. Han and ProfoundBio induced, ProfoundBio began filing patent applications directed to ADC linker compounds that both (i) differed materially from those disclosed in the April 2021 Applications; and (ii) used and disclosed the AbbVie ADC Trade Secrets and related confidential information without authorization from AbbVie. Specifically, on July 6, 2021, ProfoundBio filed PCT/CN2021/104618, the first priority application for the '227 PCT.

118. That July 6, 2021 application, and its progeny, marked rapid and dramatic advances in ProfoundBio's ADC linker designs compared to what ProfoundBio was doing as reflected in the April 2021 patent application. As noted, the rapid acceleration in ProfoundBio's ADC linker

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

designs in just a matter of a few months were only possible because ProfoundBio and Dr. Han deliberately sought out Dr. Gavrilyuk and acquired the AbbVie ADC Trade Secrets from her.

119. The "before and after" table below compares representative examples of the basic linker designs disclosed in the April 2021 Applications (left column) (Ex. L; Ex. M) with the advanced linker designs that Dr. Gavrilyuk disclosed in the priority applications for the '227 PCT (right column) (Ex. J).

| **ProfoundBio Linkers (April 2021 Applications)** | **ProfoundBio Linkers (July 2021)** |
|---|---|
| | Chemical Formula: $C_{95}H_{149}FN_{12}O_{35}$<br>Exact Mass: 2089.02<br>Molecular Weight: 2090.32<br>PB038 |

120. As shown above, ProfoundBio's April 2021 designs conspicuously lack Sugar Scaffold features (blue), either alone or combined with other features like a spacer (yellow), a maleimide antibody attachment site (pink), and a VC-PABC cleavage site (green) found in LD038, which appeared just a few months later in the July 2021 priority applications for the '227 PCT.

121. The "before and after" comparison confirms a dramatic advance in ProfoundBio's ADC linker designs after ProfoundBio gained access to the AbbVie ADC Trade Secrets, thanks to

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Dr. Gavrilyuk. The "new" disclosures in ProfoundBio's July 2021 applications contain stolen AbbVie ADC Trade Secrets, and, in some cases, are atom-for-atom copies of features, combinations of features, and concepts of the AbbVie ADC Trade Secrets.

122.    Indeed, there are particular hallmarks of misappropriation in Dr. Han's, ProfoundBio's, and Dr. Gavrilyuk's use and disclosure of the AbbVie ADC Trade Secrets and related confidential information in the '227 PCT, the '067 PCT, the '345 PCT, and the '890 PCT. For example, the '227 PCT (Ex. J) describes the following linker-drug structure (PB003) in ¶¶ [0580]-[0592]:



123.    The PB003 structure includes AbbVie's ADC Trade Secrets, including Sugar Scaffold features (blue), a spacer (yellow), a maleimide antibody attachment site (pink), and a VC-PABC cleavage site (green). In fact, the entire substructure of PB003 shown below in the red box was lifted atom-for-atom from confidential AbbVie documents that were synthesized years prior to the priority date of ProfoundBio's patents and to which Dr. Gavrilyuk had access:

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

PB003

124.    Apart from the structural and conceptual similarities between PB003 and the AbbVie ADC Trade Secrets, there are critical similarities between PB003 and the contents of confidential and proprietary AbbVie documents. For example, the PB003 spacer is a tripeptide comprising three lysine residues, an unusual design that corresponds exactly to spacers designed by Dr. Munneke at AbbVie by 2017.

125.    As another example, PB003 includes a tert-butyl protecting group (shown in purple, above), which would be unexpected in an ADC linker-drug structure given that the tert-butyl group is highly hydrophobic. This tert-butyl protecting group, however, corresponds exactly with structures described by AbbVie scientists in confidential AbbVie documents in which such a tert-butyl was added as a protecting group during synthesis and could be removed in the final molecule. The presence of this anomalous, hydrophobic tert-butyl protecting group in PB003 is further evidence that AbbVie's trade secret and confidential information was used to prepare the applications for the '227 PCT.

126.    Genmab, through its diligence, knew, should have known, or was willfully blind to these signs of misappropriation of AbbVie's ADC Trade Secrets. As Genmab's own Chief Financial Officer stated: "[L]et's be rest assured, [the ProfoundBio acquisition] is something that we really, really studied very, very carefully. The tons of bottom work on the company and the

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

assets and the technology[.]" (Ex. C at 15). As suggested by Genmab's Chief Financial Officer, its review of ProfoundBio's intellectual property was "very, very carefu[l]." *Id.* Indeed, any reasonable diligence would have uncovered glaring issues with even a cursory assessment of exemplary patent issues, including, for example, inventorship and ownership.

127. Specific examples of ADC linker designs that incorporate or are derived from AbbVie ADC Trade Secrets include the following structures disclosed in the '227 PCT (Ex. J):

**PB003** **PB004** **PB008**

**PB026** **PB037** **PB038**

**PB085** **PB088** **PB089**

128. These linker designs are among the examples of the AbbVie ADC Trade Secrets disclosed by ProfoundBio in its patent applications, without AbbVie's authorization.

129. Additional exemplary, non-limiting uses and disclosures of one or more of the

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

AbbVie ADC Trade Secrets in the '227 PCT (Ex. J) include: ¶¶ [0010], [0014], [0041], [0042], [0054], [0069], [0070],  [0074], [0079], [0170], [0184], [0245], [0246], [0258], [0470], [0472], [0474], [0480],  [0482], [0484], [0476], [0478], [0486], [0488], [0490], [0492], [0494], [0495], [0497], [0563], [0572], [0576], [0580], [0592], [0597], [0603], [0609], [0616], [0624], [0639], [0662], [0665], [0689], [0697], [0704], [0712], [0718], [0723], [0728], [0732], [0768], [0778], [0782], [0794], [0804], [0808], [0818], [0859], [0863], [0887], [0898], and [0902]; and, claims 4, 10, 46, 47, 59, 86-87, 89, 95-96, and 120.

130.    Before July 2021, Dr. Gavrilyuk (and Dr. Han) knew that the AbbVie ADC Trade Secrets were trade secrets. For example, in 2017 she acknowledged in an email to Dr. Munneke that the structures highlighted above were "your sugar scaffold." She even implored Dr. Munneke to "[p]lease make sure you have 'CONFIDENTIAL' on every page of that document." The document Dr. Munneke emailed to Dr. Gavrilyuk included structural features of AbbVie's trade secret Sugar Scaffold designs, including those that appear in unconsented disclosures in ProfoundBio's patent applications, such as the '227 PCT, discussed herein.

131.    Before July 2021, ProfoundBio and Dr. Han knew or had reason to know that Dr. Gavrilyuk had extensive knowledge of AbbVie's research and development efforts in ADC technology, including the AbbVie ADC Trade Secrets. ProfoundBio and Dr. Han sought out Dr. Gavrilyuk for the precise purpose of obtaining the benefit of her knowledge of AbbVie's research and development efforts in ADC technology, including the AbbVie ADC Trade Secrets.

132.    On July 6, 2021, ProfoundBio filed the first priority application for the '227 PCT, naming Dr. Gavrilyuk as a coinventor and disclosing and claiming the LD038 linker and other AbbVie ADC Trade Secrets without AbbVie's consent.

133.    In pending prosecution related to the '227 PCT, both Dr. Han and Dr. Gavrilyuk signed sworn declarations to the U.S. Patent Office attesting that they are "original inventors" of the subject matter in the application.

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

134. ProfoundBio and Dr. Han well know that the ADC linker designs they misappropriated from AbbVie with Dr. Gavrilyuk are highly valuable and proprietary. In fact, they repeatedly presented and separately disclosed (e.g., in patent applications) the LD038 linker of Rina-S/PRO1184, as a "black box" and even assert that the linker structure and synthesis is "novel" and "proprietary" to ProfoundBio:

Novel, Proprietary Linker Technology Platform

- Highly hydrophilic and stable linkers
  - Proven cysteine-based conjugation
  - Validated enzymatic peptide-PABC cleavage mechanism
  - Better physiochemical properties and enables homogeneous DAR = 8
- Modular synthetic process for manufacturing

Cleavable highly hydrophilic linker
LD038
Exatecan

Cleavable highly hydrophilic linker
LD163
MMAE

ProfoundBio NONCONFIDENTIAL 11

(Ex. A at 11).

135. Despite their knowledge, ProfoundBio and Dr. Han enticed and encouraged, with full knowledge of their actions and intent, Dr. Gavrilyuk to use the AbbVie ADC Trade Secrets, and to disclose such trade secrets and information to other ProfoundBio employees and/or affiliates to materially advance and accelerate ProfoundBio's ADC technology development.

136. Both ProfoundBio and Dr. Han knew or had reason to know, based on the foregoing, as well as on their own encouragement and enticement, that Dr. Gavrilyuk and other ProfoundBio employees and/or affiliates to whom Dr. Gavrilyuk disclosed the AbbVie ADC Trade Secrets and

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

confidential information were using those trade secrets and confidential information to advance and accelerate ProfoundBio's ADC technology development in a number of ways, including preparing international patent applications, patents, and other publications, and developing ADC clinical and pre-clinical ADC product candidates.

137.    Between 2021 and 2022, Dr. Gavrilyuk collaborated with ProfoundBio beyond simply being named a coinventor of ProfoundBio patent applications. For example, she is listed as a coauthor with other ProfoundBio employees on an abstract and poster presentation given at the AACR-NCI-EORTC Virtual International Conference on Molecular Targets and Cancer Therapeutics in 2021 (Ex. N). Dr. Gavrilyuk also is listed as a coauthor with other ProfoundBio employees on an abstract and poster presentation given at the American Association for Cancer Research Annual Meeting in 2022. (Ex. O).

138.    Starting in late 2022, ProfoundBio continued to file additional applications right up until the day before the '227 PCT published on January 12, 2023.

139.    On October 26, 2022, ProfoundBio filed PCT/CN2022/127588, the priority application for the '067 PCT. The '067 PCT lists, among others, Dr. Gavrilyuk and Dr. Han as named inventors.

140.    The '067 PCT discloses and claims certain AbbVie ADC Trade Secrets without AbbVie's consent. Exemplary, non-limiting uses and disclosures of one or more of the AbbVie ADC Trade Secrets in the '067 PCT (Ex. P) include: ¶¶ [0037], [0309], [0313], [0319], [0337], [0366], [0336], [0406], [0408], [0409], [0503], [0507], [0511], [0523], [0534], [0540], [0547], [0555], [0570], [0572], [0593], [0596], [0635], [0663], [0673], [0685], [0689], [0696], [0794], [0818], [0829], [0833]; and claims 45 and 118-120.

141.    On January 11, 2023, knowing that the '227 PCT would publish the next day, ProfoundBio filed PCT/CN2023/071778 and PCT/CN2023/071781, the priority applications for the '345 PCT and the '890 PCT, respectively.

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

142. The ’345 PCT discloses and claims certain AbbVie ADC Trade Secrets without AbbVie’s consent. Exemplary, non-limiting uses and disclosures of one or more of the AbbVie ADC Trade Secrets in the ’345 PCT (Ex. K) include: ¶¶ [0082]-[0083], [0087]-[0088], [0131]-[0132], [0140], [0161]-[0162], [0168], [0209]-[0210], [0222], [0291], [0364], [0400]-[0401], [0413], [0428]-[0429], [0436], [0460], [0469], [0510], [0514]-[0519], [0524]-[0535], [0540]-[0544], [0546]-[0549], [0551]-[0554], [0557]-[0560], [0562]-[0565], [0567]-[0570], [0574]-[0577], [0579]-[590], [0593]-[0605], [0631], [0642]-[0646], [0651]-[0668], [0672]-[0677], [0682]-[0685], [0687]-[0694], [0697]-[0702], [0708]-[0711], [0722]-[0723], [0726], [0729]; and, claims 6, 7, 11, 31, 43-44, 56, 70-71, 77, 101, 110, and 119-120.

143. The ’890 PCT discloses and claims certain AbbVie ADC Trade Secrets without AbbVie’s consent. Exemplary, non-limiting uses and disclosures of one or more of the AbbVie ADC Trade Secrets in the ’890 PCT (Ex. Q) include: ¶¶ [0091], [0139]-[0140], [0153]-[0156], [0183], [0189], [0213], [0223], [0518], [0522], [0532]-[0536], [0547]-[0548], [0551]-[0552], [0555]-[0556], [0561]-[0562], [0565]-[0573], [0577]-[0587], [0616]-[0624], [0630]-[0631], [0639], [0648], [0652], [0656], [0670], [0678]-[0683]; and, claims 10, 11, 15, 52-53, 66-69, 94, 99, 123, 133, 156-157, and 166.

144. ProfoundBio filed the ’227 PCT, the ’067 PCT, the ’345 PCT, and the ’890 PCT (and related applications in various patent offices worldwide) without permission from AbbVie to use or disclose the AbbVie ADC Trade Secrets and confidential information.

145. Based on common industry practices of seeking patent coverage over clinical trial candidates, the Rina-S/PRO1184, PRO1160, PRO1286, and PRO1107 linkers are within the scope of the original claims of the ’227 PCT, the ’067 PCT, the ’345 PCT, and the ’890 PCT (and related applications in various patent offices worldwide). Defendants intend to seek patent claims based on the ’227 PCT, the ’067 PCT, the ’345 PCT, and the ’890 PCT that read on the Rina-S/PRO1184, PRO1160, PRO1286, and PRO1107 linkers.

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

146. By May 2024, ProfoundBio's successful clinical and pre-clinical candidates PRO1184, PRO1160, PRO1286, and PRO1107 and its burgeoning portfolio of patent applications caught the attention of Genmab, who purchased ProfoundBio for $1.8 billion USD. Genmab paid $1.8 billion USD for ProfoundBio because Genmab knew that the ADC linker designs that ProfoundBio and Dr. Han misappropriated from AbbVie, including LD038, LD343, and others, put Defendants in a position to launch a commercial ADC product that could compete with AbbVie's ELAHERE®. Indeed, as discussed in Paragraphs 10-14, Genmab directly attributed the value of the ProfoundBio acquisition (including its patent portfolio and pipeline) to the misappropriated AbbVie ADC Trade Secrets. Moreover, as discussed above, Genmab knew, should have known, or was willfully blind to the misappropriation of AbbVie's ADC Trade Secrets at least by way of its diligence with specific attention to ProfoundBio's assets, technology, and intellectual property.

147. Moreover, on July 29, 2024, Genmab's Chief Medical Officer Dr. Tahamtan Ahmadi, M.D. Ph.D. stated:

> Sesutecan [i.e., LD038] is a highly hydrophilic stable, cleavable linker designed to mask the hydrophobicity of conjugated exatecan on the ADC, enabling high DAR and efficient delivery of the exatecan payload to tumors while maintaining favorable physicochemical and pharmacokinetic properties of the ADC.

(Ex. B at 2).

148. Dr. Ahmadi said that Genmab sees LD038 as a game-changer:

> We believe that Rina-S has the potential to broaden, deepen, and consequently expand activity beyond what has been seen with FRα approaches. In addition, it has shown a potentially differentiated safety profile in clinical development thus far. This potential differentiation is a *direct result of the novel proprietary hydrophilic linker technology* developed by ProfoundBio.

(Ex. B at 2) (emphasis added).

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

149.    Dr. Ahmadi confirmed that Genmab also saw significant value in other ADC linkers that include the AbbVie ADC Trade Secrets, like LD343, stating that Genmab was "also excited about" PRO1107. (Ex. B at 2).

150.    Dr. Ahmadi also said that Genmab is "planning to use ProfoundBio's innovative ADC technology platforms, including *the proprietary hydrophilic linker-drug platform* as well as proprietary and novel payloads, to enhance our existing capabilities. We will leverage these capabilities to add additional candidates to our pipeline in the near future." (Ex. B at 2) (emphasis added).

151.    The same ADC linker technology that Dr. Ahmadi and Genmab see as a differentiator for Rina-S/PRO1184, PRO1160, PRO1286, and PRO1107, and potential future Genmab products, was not developed independently by ProfoundBio. Indeed, as described in Paragraphs 10-14, ProfoundBio and other senior executives from Genmab have attributed the differentiation of Rina-S not only to ProfoundBio's linker based on AbbVie's trade secret technology, but also, more specifically to "the very heavy use of Sorbitol in order to increase the hydrophilicity" of the linker. (Genmab M&A call April 3, 2024). This statement refers specifically to AbbVie's trade secret Sugar Scaffold technology that Dr. Han and ProfoundBio knowingly obtained from Dr. Gavrilyuk.  As such, the central value of Genmab's ProfoundBio acquisition of more than $1.8 billion USD ties directly to the misappropriated AbbVie ADC Trade Secrets.

152.    Defendants' unauthorized use and disclosure of the AbbVie ADC Trade Secrets and related confidential information, and misappropriation of such information by filing multiple patent applications disclosing AbbVie ADC Trade Secrets and confidential information without AbbVie's permission, deprived AbbVie of its intellectual property and AbbVie's ability to maintain its secrecy, or otherwise commercialize, protect, or have exclusive use of AbbVie's intellectual property as AbbVie saw fit.

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

153. Defendants' further unauthorized use and disclosure of the AbbVie ADC Trade Secrets and related confidential information, and misappropriation of such information in the design, development, testing, pre-clinical and clinical evaluation of Rina-S/PRO1184, PRO1160, PRO1286, and PRO1107 and other clinical and pre-clinical candidates further deprived AbbVie of its intellectual property and AbbVie's ability to maintain its secrecy, or otherwise commercialize, protect, or have exclusive use of AbbVie's intellectual property as AbbVie saw fit.

154. Indeed, Genmab is currently conducting clinical trials, including within the United States, for Rina-S/PRO1184 (e.g., NCT05579366, NCT06619236), PRO1160 (e.g., NCT05721222), PRO1286 (e.g., NCT06685068), and PRO1107 (e.g., NCT06171789).

155. Genmab imports or causes to be imported some or all components of Rina-S/PRO1184 into the United States for use in ongoing clinical trials.

156. ProfoundBio U.S. Co. imports or causes to be imported some or all components of Rina-S/PRO1184 into the United States for use in ongoing clinical trials.

157. ProfoundBio (Suzhou) Co., Ltd. imports or causes to be imported some or all components of Rina-S/PRO1184 into the United States for use in ongoing clinical trials.

158. Genmab imports or causes to be imported some or all components of PRO1160, PRO1286, or PRO1107 into the United States for use in ongoing clinical trials.

159. ProfoundBio U.S. Co. imports or causes to be imported some or all components of PRO1160, PRO1286, or PRO1107 into the United States for use in ongoing clinical trials.

160. ProfoundBio (Suzhou) Co., Ltd. imports or causes to be imported some or all components of PRO1160, PRO1286, or PRO1107 into the United States for use in ongoing clinical trials.

161. Defendants' conduct threatens to cause severe and irreparable harm to AbbVie with the imminent prospect of directly competing in the market against Rina-S, a product that embodies AbbVie's misappropriated ADC Trade Secrets.

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

**Dr. Gavrilyuk Violated Her Obligations to AbbVie**

162. Dr. Gavrilyuk retained the AbbVie Trade Secrets by virtue of her later disclosures of them to Dr. Han and ProfoundBio, as evidenced by the unauthorized disclosures of the AbbVie Trade Secrets in at least the ’227 PCT and the ’067 PCT.

163. Dr. Gavrilyuk had an obligation to maintain the secrecy and confidentiality of the AbbVie ADC Trade Secrets and related confidential information, which continued even after her employment at AbbVie ended.

164. ProfoundBio and Dr. Han conspired to have Dr. Gavrilyuk violate, and Dr. Gavrilyuk did intentionally violate, her obligation to maintain the secrecy of AbbVie’s trade secret and confidential information by disclosing the AbbVie ADC Trade Secrets and related confidential information to ProfoundBio without authorization from AbbVie and by purporting to assign to ProfoundBio, also without authorization from AbbVie, inventions that are owned by AbbVie.

165. ProfoundBio and Dr. Han conspired with Dr. Gavrilyuk to violate, and Dr. Gavrilyuk did violate, her obligation to maintain the secrecy of AbbVie’s trade secret and confidential information by disclosing the AbbVie ADC Trade Secrets and related confidential information to ProfoundBio and the world without authorization from AbbVie and by causing the disclosure, dissemination, and publication of the AbbVie ADC Trade Secrets and related confidential information by ProfoundBio, also without authorization from AbbVie, and claiming it as their own.

166. Dr. Gavrilyuk also had an obligation to communicate her secrecy and confidentiality obligations with respect to AbbVie’s confidential information (including the AbbVie ADC Trade Secrets and related confidential information) to subsequent employers and anyone to whom she provided contracting or consulting services, as well as providing future employers with a copy of her employee agreement. She further had an obligation to advise AbbVie of the name and address of future employers for two years after termination.

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

167. Dr. Gavrilyuk violated her obligation to advise AbbVie about Deep Valley Labs, a company that has employed her since April 2020, before her departure from AbbVie in December 2020. Dr. Gavrilyuk also violated her obligations to communicate her secrecy and confidentiality obligations with respect to AbbVie's confidential information (including the AbbVie ADC Trade Secrets and related confidential information) to ProfoundBio and/or Deep Valley Labs.

**Dr. Han Violated His Obligations to AbbVie**

168. Dr. Han's employment agreement with AbbVie obligated Dr. Han to maintain the secrecy and confidentiality of the AbbVie ADC Trade Secrets and related confidential information, which obligation continued even after his employment at AbbVie ended. Dr. Han violated his obligations to maintain the secrecy of AbbVie's confidential information of his employee agreement by using, disclosing, or assisting in the disclosure to others of the AbbVie ADC Trade Secrets. For example, Dr. Han is listed as a named inventor on multiple ProfoundBio patent applications including the '227 PCT and the '067 PCT. Moreover, Dr. Han used his knowledge of AbbVie's confidential information (including the AbbVie ADC Trade Secrets) to urge Dr. Gavrilyuk to violate her employment agreement obligations.

169. Dr. Han and other Defendants conspired to have Dr. Gavrilyuk violate, and Dr. Gavrilyuk did intentionally violate, her obligation to maintain the secrecy of AbbVie's trade secret and confidential information by disclosing the AbbVie ADC Trade Secrets and related confidential information to ProfoundBio without authorization from AbbVie and by purporting to assign to ProfoundBio, also without authorization from AbbVie, inventions that are owned by AbbVie. Moreover, through the actions described herein, Dr. Han himself violated his employment agreement with AbbVie.

170. ProfoundBio and Dr. Han conspired with Dr. Gavrilyuk to violate, and Dr. Gavrilyuk did violate, her obligation to maintain the secrecy of AbbVie's trade secret and confidential information by disclosing the AbbVie ADC Trade Secrets and related confidential

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

information to ProfoundBio and the world without authorization from AbbVie and by causing the disclosure, dissemination, and publication of the AbbVie ADC Trade Secrets and related confidential information by ProfoundBio, also without authorization from AbbVie, and claiming it as their own.

**Defendants Conspired Against AbbVie**

171. Defendants knowingly conspired and intended to misappropriate the AbbVie ADC Trade Secrets and related confidential information and to cause Dr. Gavrilyuk to violate her confidentiality obligations to AbbVie as alleged herein for the purpose of stealing and using the AbbVie ADC Trade Secrets and related confidential information for Defendants' gain.

172. Each of the Defendants agreed to so conspire and did so conspire in committing the acts alleged herein, and acted in concert with each other, reaching a mutual understanding to accomplish a common and unlawful plan, and causing damages to AbbVie, all according to proof.

173. As a direct, foreseeable, and proximate result of Dr. Han's and Dr. Gavrilyuk's violation and Defendants' misappropriation, AbbVie has suffered and continues to suffer the loss and unauthorized use of its intellectual property in an amount to be proven at trial, for which AbbVie is entitled to compensation.

174. As a result of said conspiracy, each of the Defendants is responsible as joint tortfeasors for all damages ensuing from the wrongs alleged herein, irrespective of whether or not they were direct actors and regardless of the degree of their personal activity.

**Genmab Acquired ProfoundBio for Its Pipeline That It Knew or Should Have Known Uses the Misappropriated AbbVie ADC Trade Secrets**

175. Genmab's leadership repeatedly emphasized the keystone of its acquisition of ProfoundBio was Rina-S, specifically identifying features in Rina-S that embody the AbbVie ADC Trade Secrets. On April 3, 2024, Genmab and ProfoundBio announced they had entered into a definitive agreement for Genmab to acquire ProfoundBio. That same day, Genmab held a

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

conference call regarding the proposed acquisition. Genmab's Executive Vice President and Chief Financial Officer expressed Genmab's eagerness to acquire Rina-S, specifically that Genmab was "really excited to be announcing this transaction today and really can't wait to get the deal closed, again, to really put our foot on the gas pedal, particularly around Rina-S." (Ex. C at 15). As noted, Genmab's Chief Executive Officer identified Rina-S's sole differentiating factor is its "***proprietary hydrophilic linker technology.***" (Ex. G at 3) (emphasis added). And Genmab's Chief Medical Officer underscored that the only innovative aspect of that linker technology "is the very heavy use of Sorbitol in order to increase the hydrophilicity," clarifying that the other components of the linker "are essentially off the shelf." (Ex. C at 19).

176. Before buying ProfoundBio for $1.8 billion USD, Genmab conducted exacting diligence to scrutinize the asset Genmab sought to acquire, including the intellectual property. During the April 3, 2024 conference call, an analyst asked Genmab about its process for vetting a company in the ADC industry. Genmab's CFO replied: "[L]et's be rest assured, [the ProfoundBio acquisition] is something that we really, really studied very, very carefully. The tons of bottom work on the company and the assets and the technology[.]" (Ex. C at 15). As suggested by the CFO's reference to technology, this "very, very carefu[l]" review included specific scrutiny on intellectual property. In fact, Genmab retained three law firms to advise it on multiple aspects of the transaction. (Ex. H at 2).

177. As a sophisticated company performing a thorough due diligence with outside counsel, Genmab reviewed ProfoundBio's patent applications with exacting detail. This included, for example, the '227 PCT, the '067 PCT, the '345 PCT, and the '890 PCT. Based on standard diligence practice, and given Genmab's admitted focus on ProfoundBio's purportedly proprietary, platform hydrophilic linker technology, Genmab's diligence would focus on important intellectual property issues including ownership and inventorship, among others. Given Genmab's statement

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

that the ProfoundBio's heavy use of sorbitol was its sole innovation, any reasonable diligence would have revealed the misappropriation of AbbVie's ADC Trade Secrets.

178. Moreover, any reasonable company in Genmab's position – facing newly disclosed and significant complex chemistry, introduced in such a brief period of time, along with two new inventors (one of whom the acquisition target appears to lack control over), ***relating to the single most important aspect of the most important product driving an almost $2 billion transaction*** – would have seen these red flags and investigated them. At the most, this investigation would have unearthed the details of the trade secret misappropriation. At the least, this investigation would have revealed the impossibility of ProfoundBio's independent development of the linker technology in such a short period of time. This, in addition to the fact that the '227 PCT and the '067 PCT list two ex-AbbVie employees as named inventors, including one (Dr. Gavrilyuk) who ended her employment with AbbVie just months before the '227 PCT's purported priority date. These and other circumstances would have yielded grave concerns for Genmab that ProfoundBio did not in fact invent and independently develop the linker technology. Further, given these two scenarios, at best Genmab could only have been willfully blind to the misappropriation and red flags before it: the facts speak for themselves.

179. Moreover, AbbVie expressly notified Genmab of the misappropriated AbbVie ADC Trade Secrets no later than December 13, 2024.

180. Under these circumstances, Genmab knew, should have known, or was willfully blind to ProfoundBio, Dr. Gavrilyuk, and Dr. Han's misappropriation of AbbVie's ADC Trade Secrets. Genmab further knew, should have known, or was willfully blind that ProfoundBio implemented AbbVie's ADC Trade Secret information into Rina-S/PRO1184, PRO1160, PRO1286, and PRO1107. Despite this knowledge, Genmab proceeded with its acquisition and continues its unauthorized use of the misappropriated AbbVie ADC Trade Secrets at least by

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

funding the development of Rina-S/PRO1184, PRO1160, PRO1286, and PRO1107, with the intent of further exploiting the misappropriated AbbVie ADC Trade Secrets for its own financial benefit.

**FIRST CAUSE OF ACTION**
**Misappropriation of Trade Secrets Under the Defend Trade Secrets Act**
**(18 U.S.C. § 1836, *et seq*.)**
***
**Against All Defendants**

181. AbbVie incorporates by reference the allegations contained in Paragraphs 1–180 as though fully set forth herein.

182. AbbVie is the owner of the AbbVie ADC Trade Secrets, including designs for chemical structures and compounds, formulations, processes, experimental results, experimental data, and scientific discoveries, as described above, that constitute "trade secrets" within the meaning of 18 U.S.C. § 1839(3).

183. The AbbVie ADC Trade Secrets were developed as part of AbbVie's operation and business and comprise valuable competitive information.

184. Such trade secrets are related to a product or service that is used in or intended for use in interstate or foreign commerce. Specifically, the AbbVie ADC Trade Secrets are related to pharmaceutical products, medical treatments, medical therapies, and other medical services, such as ADC pharmaceutical products and services, that are or are intended to be used, sold, shipped, and/or ordered in interstate and/or foreign commerce. Indeed, the AbbVie ADC Trade Secrets are incorporated in and/or otherwise related to ProfoundBio/Genmab's ADC clinical candidate Rina-S/PRO1184, which is presently involved in an ongoing Phase 2 clinical trial. Rina-S/PRO1184 and other potential pharmaceutical drug candidates incorporating and/or otherwise related to the AbbVie ADC Trade Secrets, such as PRO1160, PRO1286, and PRO1107, are intended to be used as medical treatments across the globe, once approved by the FDA and foreign regulatory agencies.

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

185. In addition, the ’227 PCT, the ’067 PCT, the ’345 PCT, and the ’890 PCT (and related applications filed in patent offices worldwide) indicate Defendants’ use and intent to use the AbbVie ADC Trade Secrets in interstate and/or foreign commerce.

186. AbbVie expended considerable time and resources in developing the AbbVie ADC Trade Secrets.

187. At all relevant times, AbbVie has taken reasonable measures to limit and restrict others from knowing, ascertaining, or using the AbbVie ADC Trade Secrets, including by limiting access to sensitive information, requiring employees and contractors to sign agreements prohibiting use and disclosure of such information outside AbbVie, protecting files and information from unauthorized access, restricting access and providing physical security at AbbVie’s facilities and storage sites, and requiring the return of sensitive materials upon termination of agreements, and as set forth further above.

188. The AbbVie ADC Trade Secrets are important to AbbVie’s business success, and they derive independent economic value from not being generally known to, and not being readily ascertainable through proper means (such as reverse engineering, independent derivation, or any other lawful means of acquisition) by, another person who can obtain economic value from their disclosure or use.

189. AbbVie’s protection of the AbbVie ADC Trade Secrets prevents competitors from being able to copy AbbVie’s inventions, products and methods or gain an unfair competitive advantage over AbbVie.

190. Defendants have misappropriated the AbbVie ADC Trade Secrets.

191. Defendants stole without authorization from AbbVie (Dr. Gavrilyuk) and acquired without authorization from AbbVie (Dr. Han/ProfoundBio) the AbbVie ADC Trade Secrets through the conduct alleged above. Moreover, all Defendants used and/or disclosed such trade

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

secrets without authorization from AbbVie to unfairly advance the development of Defendants' ADC products, patents, and technology to AbbVie's detriment.

192. Dr. Gavrilyuk stole the AbbVie ADC Trade Secrets and disclosed them to Dr. Han and ProfoundBio at their urging and with their knowledge, without AbbVie's knowledge or authorization and in violation of Dr. Gavrilyuk's duty to maintain secrecy of the trade secrets.

193. Dr. Gavrilyuk, at Dr. Han and ProfoundBio's urging and with their knowledge, used and disclosed the AbbVie ADC Trade Secrets through improper means, including, but not limited to, by violating her obligation to maintain the secrecy of AbbVie's trade secrets, to which she had access pursuant to and exclusively as a condition of her ongoing employment by AbbVie, and knowing or having reason to know that her knowledge of the trade secrets was acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secrets both during and after her employment with AbbVie.

194. Based on industry standards and practices regarding trade secrets and confidentiality in the drug development space, and based on Defendants' knowledge of Dr. Gavrilyuk's role and responsibilities to AbbVie as AbbVie's Senior Principal Research Scientist, Discovery Chemistry and leader of AbbVie's ADC technology development projects and Dr. Han's prior work at AbbVie, wherein he was subject to the same confidentiality and secrecy obligations as Dr. Gavrilyuk, ProfoundBio and Dr. Han knew, reasonably had reason to know, or were willfully blind to the fact that they acquired the AbbVie ADC Trade Secrets from Dr. Gavrilyuk (through Dr. Han and ProfoundBio's knowing and intentional urging) without authorization from AbbVie and thus by improper means, and that Dr. Gavrilyuk, Dr. Han and/or ProfoundBio (including its employees and affiliates) were using the AbbVie ADC Trade Secrets in ProfoundBio's ADC program in contravention of Dr. Gavrilyuk's duty of confidentiality to AbbVie.

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

195. Defendants knew or had reason to know that Dr. Gavrilyuk, Dr. Han and/or ProfoundBio scientists did, in fact, use and disclose the AbbVie ADC Trade Secrets in connection with ProfoundBio's ADC linker program, at least in part due to the change of direction in the use and disclosure of LD038 in the '227 PCT and the '067 PCT, as well as its incorporation into Rina-S/PRO1184 and subsequent applications for the '345 PCT and the '890 PCT.

196. Additionally, when Defendants investigated the ownership and inventorship and circumstances surrounding the design and development of the ADC linker structures disclosed in the '227 PCT and the '067 PCT, including Genmab through its exacting diligence with respect to, for example, intellectual property, they learned or were willfully blind to the fact that ProfoundBio scientists did not independently develop those ADC linker or linker-drug structures, but instead that the ADC linker or linker-drug structures disclosed and claimed were copied or derived from the AbbVie ADC Trade Secrets that Dr. Han and ProfoundBio obtained from Dr. Gavrilyuk.

197. Defendants used and disclosed, without AbbVie's knowledge or consent, the AbbVie ADC Trade Secrets by, among other things, using them to develop patent applications and develop and/or clinically test ProfoundBio's ADC clinical and pre-clinical candidates (including Rina-S/PRO1184, PRO1160, PRO1286, and PRO1107), and publicly disclosing them in patent applications. Indeed, the '227 PCT, the '067 PCT, the '345 PCT and the '890 PCT are based on and derived from the AbbVie ADC Trade Secrets and constitute improper use and disclosure of the AbbVie ADC Trade Secrets.

198. Acts in furtherance of Dr. Gavrilyuk's misappropriation were committed in the United States and within this District, including, but not limited to: (i) disclosing the AbbVie ADC Trade Secrets to ProfoundBio and Dr. Han in the United States and within this District; and (ii) filing, prosecuting, and maintaining patent applications in the United States and/or PCT applications designating the United States which are based on and derived from the AbbVie ADC

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Trade Secrets, all of which constitute improper use and disclosure of the AbbVie ADC Trade Secrets.

199.    Acts in furtherance of ProfoundBio and Dr. Han's misappropriation were committed in the United States and within this District, including, but not limited to: (i) stealing the AbbVie ADC Trade Secrets from AbbVie in the United States and within this District; (ii) disclosing the AbbVie ADC Trade Secrets in the United States and within this District; (iii) conducting United States–based clinical trials of Rina-S/PRO1184, an ADC derived from misappropriation of the AbbVie ADC Trade Secrets; (iv) making submissions to the United States FDA relating to the misappropriation of the AbbVie ADC Trade Secrets; and (v) filing, prosecuting, and maintaining patent applications in the United States and/or PCT applications designating the United States that are based on and derived from the AbbVie ADC Trade Secrets, all of which constitute improper use and disclosure of the AbbVie ADC Trade Secrets.

200.    Acts in furtherance of Genmab's misappropriation were committed – and are ongoing – in the United States and within this District, including, but not limited to: (i) the acquisition of the stolen AbbVie ADC Trade Secrets without AbbVie's consent by consummating a transaction with ProfoundBio, including with ProfoundBio US Co., a company headquartered in Seattle, Washington; (ii) conducting United States-based clinical trials of Rina-S/PRO1184, an ADC derived from misappropriation of the AbbVie ADC Trade Secrets; (iii) conducting United States-based clinical trials of PRO1160 and PRO1286, ADCs derived from the misappropriation of the AbbVie ADC Trade Secrets; and (iv) making submissions to the United States FDA relating to the misappropriation of the AbbVie ADC Trade Secrets.

201.    Defendants' conduct constitutes misappropriation of trade secrets under 18 U.S.C. § 1839.

202.    AbbVie has been and continues to be harmed by Defendants' misappropriation of the AbbVie ADC Trade Secrets. AbbVie thus seeks compensatory damages and equitable relief.

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

203.    Defendants' actions have caused and will continue to cause AbbVie to suffer severe competitive injury, irreparable harm, and significant damages in an amount to be proven at trial. As the direct and proximate result of such misappropriation, AbbVie has suffered, among other things, damage within the meaning of 18 U.S.C. § 1836(b)(3)(B) in an amount that is yet unknown. If Defendants' conduct is allowed to continue unchanged, AbbVie will suffer further irreparable injury and significant damages, including damages that may result from Genmab's commercialization of Rina-S/PRO1184, PRO1160, PRO1286, or PRO1107.

204.    Because AbbVie's remedy at law is inadequate to compensate for the disclosure of the AbbVie ADC Trade Secrets, AbbVie also seeks equitable relief. Indeed, Dr. Gavrilyuk acknowledged in her employment agreement that the breach described herein constitutes irreparable injury.

205.    AbbVie is entitled to injunctive relief pursuant to 18 U.S.C. § 1836(b)(3)(A) and seeks appropriate, just injunctive relief to recover and protect its trade secret and confidential information and to protect its other legitimate business interests, including an injunction against Defendants' further use or disclosure of the AbbVie ADC Trade Secrets or any information derived therefrom, including (i) Defendants' further prosecution of any patent applications that Defendants have filed or will file based on the AbbVie ADC Trade Secrets; and (ii) Defendants' further development of any ADC that uses or is derived from AbbVie's trade secrets or confidential information.

206.    Defendants' misappropriation of trade secrets was willful and malicious, entitling AbbVie to recover exemplary damages and its reasonable attorneys' fees. 18 U.S.C. § 1836(b)(3)(C), (D).

207.    Pursuant to the Court's inherent powers and pursuant to 18 U.S.C. § 1836(b) AbbVie asks the Court to provide any additional relief appropriate to remedy Defendants' misappropriation of trade secrets, including the assignment to AbbVie of the '227 PCT, the '067

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

PCT, the ’345 PCT, and the ’890 PCT, and any other patent applications or patents purportedly assigned to ProfoundBio or Genmab that disclose, claim, or were based on or derived from any of the AbbVie ADC Trade Secrets, including assigning to AbbVie any amendments, continuations, and United States or foreign counterparts thereto.

**SECOND CAUSE OF ACTION**
**Declaratory Judgment (28 U.S.C. § 2201)**
*******
**Against All Defendants**

208. AbbVie incorporates by reference the allegations contained in Paragraphs 1–207 as though fully set forth herein.

209. There exists an actual, ripe, and justiciable controversy between AbbVie and Defendants regarding each party’s rights and interests in connection with the ownership and inventorship of discoveries, inventions, and pending patent applications that incorporate, disclose, claim, or use misappropriated AbbVie’s trade secrets or confidential information as well as any and all related patent applications that Defendants have filed or will file based on such trade secrets and confidential information.

210. As described above, Dr. Gavrilyuk had access to, and did access, the AbbVie ADC Trade Secrets and related confidential information while employed by AbbVie.

211. ProfoundBio and Dr. Han knew Dr. Gavrilyuk had access to the AbbVie ADC Trade Secrets and related confidential information.

212. ProfoundBio and Dr. Han collaborated with Dr. Gavrilyuk to work on ProfoundBio’s ADC program, fully knowing and intending that Dr. Gavrilyuk would use the AbbVie ADC Trade Secrets and related confidential information to advance ProfoundBio’s ADC program and patent filings, including the ’227 PCT and the ’067 PCT.

213. Dr. Gavrilyuk fulfilled ProfoundBio and Dr. Han’s intentions by disclosing AbbVie’s ADC inventions, discoveries, improvements, and innovations to ProfoundBio, in

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

violation of her obligations to AbbVie to maintain their secrecy. Defendants used and disclosed some of these discoveries and inventions without authorization from AbbVie in the ’227 PCT, the ’067 PCT, the ’345 PCT, and the ’890 PCT (and related patent applications filed in various patent offices worldwide).

214. Based on common patent practice, there may be pending, unpublished patent applications that also disclose and/or are based on the AbbVie ADC Trade Secrets or other AbbVie discoveries, inventions, improvements, and innovations.

215. Defendants also used the AbbVie ADC Trade Secrets and related confidential information without authorization from AbbVie in ProfoundBio’s development program including to derive further inventions, improvements, and discoveries that Defendants disclosed and claimed in the ’227 PCT, the ’067 PCT, the ’345 PCT, and the ’890 PCT.

216. Pursuant to Dr. Gavrilyuk’s obligations to AbbVie as an AbbVie employee with access to the AbbVie ADC Trade Secrets and confidential information, AbbVie is the legal and/or equitable owner of inventions and discoveries disclosed in the ’227 PCT, the ’067 PCT, the ’345 PCT, and the ’890 PCT (and related patent applications filed in various patent offices worldwide).

217. As a result of the conduct and events detailed above, AbbVie has legal and/or equitable ownership and/or other property interests in (i) the ’227 PCT, the ’067 PCT, the ’345 PCT, and the ’890 PCT (and related patent applications filed in various patent offices worldwide) inconsistent with and superior to any interest claimed by any of the Defendants and without being subject to any license purportedly granted by ProfoundBio or Genmab; and (ii) any ADC being developed by Defendants that uses or is derived from AbbVie’s trade secrets or confidential information.

218. Due to Defendants’ misconduct in acquiring, using, and disclosing the AbbVie ADC Trade Secrets and confidential information, Defendants have forfeited any competing interest in the ’227 PCT, the ’067 PCT, the ’345 PCT, and the ’890 PCT (and related patent

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

applications filed in various patent offices worldwide) as well as in any ADC that uses or is derived from AbbVie's trade secrets of confidential information.

219. AbbVie's ownership and related interests include sole or joint legal and equitable ownership of the '227 PCT, the '067 PCT, the '345 PCT, and the '890 PCT (and related patent applications filed in various patent offices worldwide) and any related patents, patent applications, continuations, and foreign or United States counterparts thereof that Defendants have or will file or claim, as well as any ADC that uses or is derived from AbbVie's trade secrets of confidential information. Any license or assignment to any of these intellectual property or product rights purportedly granted by ProfoundBio or Genmab is null and void *ab initio*. The Court should so declare pursuant to 28 U.S.C. § 2201.

## THIRD CAUSE OF ACTION

**Tortious Interference with Contract (Washington State Law)**

*******

**Against ProfoundBio and Dr. Han**

220. AbbVie incorporates by reference the allegations contained in Paragraphs 1–219 as though fully set forth herein.

221. AbbVie had a valid employee agreement between AbbVie and Dr. Gavrilyuk which required, among other things, that Dr. Gavrilyuk maintain the secrecy and confidentiality of confidential AbbVie information, including but not limited to the AbbVie ADC Trade Secrets.

222. Dr. Han knew of Dr. Gavrilyuk's employee agreement with AbbVie, and its confidentiality provisions with respect to confidential AbbVie information, including but not limited to the AbbVie ADC Trade Secrets, because, among other reasons, Dr. Han had a similar employee agreement with AbbVie. ProfoundBio also knew of AbbVie's employee agreement with Dr. Gavrilyuk because, among other things, Dr. Han co-founded ProfoundBio and served as an executive.

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

223. ProfoundBio and Dr. Han intentionally acted to induce Dr. Gavrilyuk to breach her employee agreement with AbbVie, including with respect to confidential AbbVie information, including but not limited to the AbbVie ADC Trade Secrets, by actively collaborating with her regarding the design, development, and alleged co-invention of ADC technology reflected, for example, in the ’227 PCT and the ’067 PCT and related applications filed in various patent offices worldwide. ProfoundBio and Dr. Han intended for Dr. Gavrilyuk to use and disclose confidential AbbVie information to ProfoundBio and Dr. Han, including but not limited to the AbbVie ADC Trade Secrets, in the hopes of materially advancing ProfoundBio’s ADC linker technology in terms of technical development as well as patent application preparation and filing.

224. As a result of ProfoundBio and Dr. Han’s collaboration with Dr. Gavrilyuk regarding ADC technology, Dr. Gavrilyuk actually breached her employee agreement with AbbVie by using and disclosing confidential AbbVie information, including but not limited to the AbbVie ADC Trade Secrets as reflected, for example, in the ’227 PCT and the ’067 PCT and related applications filed in various patent offices worldwide.

225. AbbVie has suffered damages as a result of the breach of Dr. Gavrilyuk’s employee agreement caused by ProfoundBio and Dr. Han in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**

**Inducement of Breach of Confidentiality Obligations**

***

**Against ProfoundBio and Dr. Han**

226. AbbVie incorporates by reference the allegations contained in Paragraphs 1–225 as though fully set forth herein.

227. ProfoundBio and Dr. Han induced disclosure of confidential AbbVie information, including but not limited to the AbbVie ADC Trade Secrets, by Dr. Gavrilyuk by collaborating with Dr. Gavrilyuk in the design, development, and alleged co-invention of ADC technology

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

reflected, for example, in the ’227 PCT and the ’067 PCT and related applications filed in various patent offices worldwide.

228. ProfoundBio and Dr. Han knew or should have known the information disclosed by Dr. Gavrilyuk was confidential to AbbVie. Among other things, ProfoundBio and Dr. Han knew that Dr. Gavrilyuk worked for AbbVie for years in the field of ADC technology pursuant to an employee agreement (and its confidentiality provisions, among others). Dr. Han, a ProfoundBio cofounder and former AbbVie employee, was subject to a similar employee agreement with AbbVie and therefore understood Dr. Gavrilyuk’s obligations to AbbVie.

229. ProfoundBio and Dr. Han intended to receive benefits from Dr. Gavrilyuk’s disclosure of confidential AbbVie information, including but not limited to the AbbVie ADC Trade Secrets, including, for example, material advancement of ProfoundBio’s ADC linker design and development, including but not limited to Rina-S/PRO1184, as well as advancement of ProfoundBio’s portfolio of patent applications.

230. AbbVie has suffered damages as a result of ProfoundBio and Dr. Han’s inducement of Dr. Gavrilyuk’s breach of her employee agreement in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

**Breach of Contract (Illinois State Law)**

*******

**Against Dr. Han**

231. AbbVie incorporates by reference the allegations contained in Paragraphs 1–230 as though fully set forth herein.

232. Section 8 of Dr. Han’s employee agreement with AbbVie provides, in pertinent part:

> EMPLOYEE shall use all best efforts to protect the secrecy and confidentiality of Confidential Information and Inventions. Employee shall not, during the term of employment with ABBVIE or thereafter, use or disclose, or assist in the disclosure to others, directly or indirectly, any Confidential Information or Invention, except as required and authorized in the scope of EMPLOYEE’s job responsibilities and in the furtherance of ABBVIE’s business.

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

> EMPLOYEE acknowledges that the relationship of EMPLOYEE to ABBVIE with respect to Confidential Information and Inventions shall be fiduciary in nature.

233. As set forth herein, Dr. Han breached his obligations under at least Section 8 of his employee agreement with AbbVie by using, disclosing, or assisting in the disclosure to others of the AbbVie ADC Trade Secrets.

234. AbbVie substantially performed its obligations under Dr. Han's employment agreement. At all relevant times, AbbVie paid Dr. Han his salary and provided the other benefits of his employment in accordance with his employment agreement.

235. AbbVie has suffered damages as a result of Dr. Han's breach of his employee agreement in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

**Breach of Contract (Illinois State Law)**

****

**Against Dr. Gavrilyuk**

236. AbbVie incorporates by reference the allegations contained in Paragraphs 1–235 as though fully set forth herein.

237. Section 8 of Dr. Gavrilyuk's employee agreement with AbbVie provides, in pertinent part:

> EMPLOYEE shall use all best efforts to protect the secrecy and confidentiality of Confidential Information and Inventions. Employee shall not, during the term of employment with ABBVIE or thereafter, use or disclose, or assist in the disclosure to others, directly or indirectly, any Confidential Information or Invention, except as required and authorized in the scope of EMPLOYEE's job responsibilities and in the furtherance of ABBVIE's business. EMPLOYEE acknowledges that the relationship of EMPLOYEE to ABBVIE with respect to Confidential Information and Inventions shall be fiduciary in nature.

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

238. As set forth herein, Dr. Gavrilyuk breached her obligations under Section 8 of her employee agreement with AbbVie by using, disclosing, or assisting in the disclosure to others of the AbbVie ADC Trade Secrets.

239. Sections 4–5 of Dr. Gavrilyuk's employee agreement with AbbVie provide, in pertinent part:

> All Inventions … which EMPLOYEE may invent, discover, originate, conceive, or reduce to practice during the term of employment with ABBVIE or which may arise out of or result from Confidential Information obtained, provided or otherwise acquired, either directly or indirectly, by EMPLOYEE in connection with EMPLOYEE's employment with ABBVIE shall be and hereby are the sole and exclusive property of ABBVIE.
>
> EMPLOYEE shall and hereby does assign to ABBVIE EMPLOYEE's entire right, title, and interest to all of the Inventions … described in Paragraph 4 and any related U.S. or foreign counterparts, including all patents, patent applications, priority rights, copyrights and registrations thereon or related thereto. EMPLOYEE shall execute any additional instruments ABBVIE considers necessary to convey, confirm or perfect ABBVIE's ownership thereof: and shall assist ABBVIE in obtaining, defending and enforcing its rights therein.

240. As set forth herein, Dr. Gavrilyuk breached her obligations under Sections 4–5 of her employee agreement with AbbVie by purporting to assign her right, title, and interest in the inventions claimed in the '227 PCT and the '067 PCT (and related applications filed in various patent offices worldwide) to ProfoundBio. Under her employee agreement, by operation of law, AbbVie is the rightful owner of her right, title, and interest in such inventions, to the extent that Dr. Gavrilyuk is an inventor.

241. AbbVie substantially performed its obligations under Dr. Gavrilyuk's employment agreement. At all relevant times, AbbVie paid Dr. Gavrilyuk her salary and provided the other benefits of her employment in accordance with her employment agreement.

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

242. AbbVie has suffered damages as a result of Dr. Gavrilyuk's breach of his employee agreement in an amount to be determined at trial.

**SEVENTH CAUSE OF ACTION**
**Breach of Fiduciary Duties (Washington State Law)**
***
**Against Dr. Gavrilyuk**

243. AbbVie incorporates by reference the allegations contained in Paragraphs 1–242 as though fully set forth herein.

244. Dr. Gavrilyuk had a fiduciary relationship with AbbVie with regard to AbbVie's trade secrets and confidential information, including the AbbVie ADC Trade Secrets. For example, Section 1 of Dr. Gavrilyuk's employee agreement with AbbVie provides, in pertinent part:

> EMPLOYEE is engaged by ABBVIE in a position of trust and confidence in which EMPLOYEE will receive, use, observe, obtain, or otherwise come into contact with or have access to Confidential Information and Inventions, and may invent, discover, initiate or otherwise contribute to Confidential Information and Inventions as an integral part of Employee's employment.

245. In addition, Section 8 of Dr. Gavrilyuk's employee agreement with AbbVie provides, in pertinent part:

> EMPLOYEE acknowledges that the relationship of EMPLOYEE to ABBVIE with respect to Confidential Information and Inventions shall be fiduciary in nature.

246. As set forth herein, Dr. Gavrilyuk violated her fiduciary duties owed to AbbVie, including her duty of loyalty to AbbVie, by breaching Sections 4–5 and 8 of her employee agreement and by misappropriating the AbbVie ADC Trade Secrets.

247. Dr. Gavrilyuk also violated her fiduciary duties and duty of loyalty she owed to AbbVie by accepting employment and/or consulting work with Deep Valley Labs as a "Co-Founder-in-Residence" in April 2020, while still employed by AbbVie. In addition, Dr. Gavrilyuk violated her fiduciary duties and duty of loyalty she owed to AbbVie by collaborating with and

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

provided consulting services to ProfoundBio and Dr. Han by no later than July 6, 2021. She never advised AbbVie of such collaboration and consulting services, nor provided AbbVie with the name or address of ProfoundBio or Dr. Han.

248. AbbVie has suffered damages as a result of Dr. Gavrilyuk's breach of her fiduciary duties in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION

**Unjust Enrichment (Washington State Law)**

***

**Against Genmab and ProfoundBio**

249. AbbVie incorporates by reference the allegations contained in Paragraphs 1–248 as though fully set forth herein.

250. As a result of unfairly acquiring the AbbVie Trade Secrets, Genmab and ProfoundBio have enjoyed and continue to enjoy substantial economic benefits. All of these benefits inure to Genmab and ProfoundBio at AbbVie's expense.

251. As stated herein, ProfoundBio acted in concert with Dr. Gavrilyuk and Dr. Han to steal AbbVie's confidential technology and use it to jumpstart and short-cut years of research and development, and fast track its stalling ADC program. Indeed, ProfoundBio avoided the vast expense necessary, in both time and money, to independently research, test, and discover the technology covered by the AbbVie Trade Secrets. AbbVie now faces the prospect of competing with a company who will enter the market early, advantaged not by independent research and innovation, but by unfairly acquiring the AbbVie Trade Secrets.

252. ProfoundBio applied for patents claiming technology it did not invent for the purpose of preventing others from using the same technology. Because AbbVie employees invented the claimed technology and assigned their interests in these inventions to AbbVie, ProfoundBio's patent applications threaten to exclude AbbVie from its own technology.

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

253.    ProfoundBio's shortcuts drew the attention of Genmab. And this was no mistake. Indeed, as stated herein, ProfoundBio repeatedly touted technology that it obtained by theft as its differentiating platform. After Genmab closely reviewed ProfoundBio's use of the AbbVie Trade Secrets, Genmab paid $1.8 billion USD to acquire ProfoundBio. As noted above at Paragraphs 13-15, Genmab took particular interest in ProfoundBio due to the technology covered by the AbbVie Trade Secrets. AbbVie (not ProfoundBio) discovered and owns the technology that drew Genmab's eye (and money). As such, ProfoundBio was unjustly enriched.

254.    Moreover, Genmab's ongoing and future use of the ProfoundBio intellectual property, technology, and ADC pipeline that it acquired positions it to participate in and market products – including Rina-S/PRO1184, PRO1160, PRO1286, and PRO1107 – in the growing market for ADC drug products. As discussed, Genmab has already touted the heavy use of sorbitol in the highly hydrophilic linkers of Rina-S/PRO1184, PRO1160, PRO1286, and PRO1107 as the key feature differentiating it from competitive products in an ADC market that could be worth billions of dollars. As such, Genmab's use of the acquired ProfoundBio intellectual property, technology, and ADC pipeline built on stolen AbbVie ADC Trade Secrets has and continues to unjustly enrich Genmab.

255.    Moreover, AbbVie unfairly lost the opportunity to seek agreements with companies like Genmab, faced the disclosure of its confidential information, and may now compete against products that were rapidly developed (and differentiated) using the very technology that Genmab and ProfoundBio improperly obtained.

256.    These circumstances, as well as others to be developed in the course of this litigation, show it would be unjust and inequitable for Genmab and ProfoundBio to retain all the benefits it received without compensating AbbVie.

257.    AbbVie has suffered damages as a result of Genmab and ProfoundBio's unjust enrichment in an amount to be determined at trial.

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff AbbVie prays for judgment against Defendants as follows:

1. Judgment in AbbVie's favor against Defendants on all causes of action alleged herein;

2. Damages, including for any actual loss (such as lost profits), unjust enrichment, and reasonable royalties, for all causes of action according to proof in an amount to be determined at trial, including, but not limited to, damages AbbVie may incur as a result of ProfoundBio or Genmab's commercial sales of Rina-S/PRO1184, PRO1160, PRO1286, PRO1107, or any other ADC product that incorporates or is derived from the AbbVie ADC Trade Secrets;

3. Exemplary damages in view of the willful and malicious misappropriation of AbbVie's trade secret information in an amount to be determined at trial;

4. A declaration that AbbVie possesses legal and/or equitable ownership, or alternatively co-ownership, and interest in the '227 PCT, the '067 PCT, the '345 PCT, and the '890 PCT and all related patents, patent applications, continuations, and derivatives thereto, inconsistent and superior to any interest asserted by Defendants, including, but not limited to, PCT/CN2021/104618, CN 202210777240.7, PCT/CN2022/104174, US18/227,828, US18/227,830, US18/595,275, US18/595,279, AU2022306065, CA3225120, JP2024529316, KR2024043823, TW202320857, PCT/CN2022/127588, PCT/US2023/077814, CN116036303, PCT/CN2023/071778, PCT/CN2024/071901, TW202434223, PCT/CN2023/071781, and PCT/US2024/011307; and that any license or assignment to any of these rights purportedly granted by Genmab or ProfoundBio, or anyone affiliated with them is null and void *ab initio*;

5. Entry of an order that all right, title, and interest in the '227 PCT, the '067 PCT, the '345 PCT, and the '890 PCT, and all related patents, patent applications, continuations, and derivatives thereto, be assigned or otherwise transferred to or declared owned by AbbVie;

6. Injunctive relief, including permanent injunctive relief:

   a. requiring Defendants, and any other individuals and entities acting in concert with them, to return all of AbbVie's trade secrets and confidential information;

   b. requiring Defendants to disclose and assign to AbbVie any and all inventions, including all pending patent applications and issued patents, of which AbbVie is the rightful owner or which contain or are derived from AbbVie's trade secrets or other confidential information;

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

c. prohibiting Defendants from using AbbVie's trade secrets, confidential information, and inventions without AbbVie's consent;

d. enjoining Defendants from further prosecution of the '227 PCT, the '067 PCT, the '345 PCT, and the '890 PCT, and all related patents, patent applications, continuations, and derivatives thereto, without AbbVie's consent and control, of which AbbVie is the rightful owner or which contain or are derived from AbbVie's trade secrets or confidential information; and

e. prohibiting Defendants from further development of any ADC that uses or is derived from AbbVie's trade secrets or confidential information.

7. A declaration that AbbVie possesses the right to prosecute the '227 PCT, the '067 PCT, the '345 PCT, and the '890 PCT, and all related patents, patent applications, continuations, and derivatives thereto;

8. A declaration that Defendants misappropriated the AbbVie ADC Trade Secrets;

9. Restitution of all property, profits, or other benefits wrongfully acquired;

10. Attorneys' fees and costs incurred by virtue of the dispute;

11. Pre-judgment and post-judgment interest at the maximum rate allowed by law; and

12. Such other and further relief as AbbVie may be entitled to or the Court may deem proper.

DATED this 21st day of March, 2025.

CORR CRONIN LLP

*s/ Steven W. Fogg*
Steven W. Fogg, WSBA No. 23528
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Ph: (206) 625-8600
sfogg@corrcronin.com

Michael A. Morin (*pro hac vice* forthcoming)
David P. Frazier (*pro hac vice* forthcoming)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Ph: (202) 637-2200
michael.morin@lw.com
david.frazier@lw.com

Tony Sammi (*pro hac vice* forthcoming)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, New York 10020
Ph: (212) 906-1200
tony.sammi@lw.com

Brenda L. Danek (*pro hac vice* forthcoming)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Ph: (312) 876-7700
brenda.danek@lw.com

Will Orlady (*pro hac vice* forthcoming)
LATHAM & WATKINS LLP
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Ph: (213) 891-8082
will.orlady@lw.com

*Attorneys for Plaintiff AbbVie Inc.*